# Commonwealth ex rel., Appellant, *v.* Vandegrift.

*Corporations—Meetings—Withdrawal of stockholders—Quorum—By-laws—Election of chairman—Election of officers.*

1. If a corporate meeting is once organized and all parties have participated, no person or faction can then, by refusing to vote or by withdrawing, thereby defeat the organization, or render the subsequent proceedings invalid.

2. The stockholders who attend the meeting and then without cause voluntarily withdraw are in no better position than those who voluntarily absent themselves in the first instance.

3. The duty of holding an annual election of a corporation is imposed by statute, and the time and place for holding it are fixed by the

by-laws. The duty as to the time and place of holding the election is quite as imperative as the provision relating to the amount of stock necessary to constitute a quorum.

4. Even a majority of the stockholders of a corporation cannot capriciously withdraw, after a corporate meeting is legally organized, for the very purpose of breaking a quorum, and then ask the courts for relief on the ground that a quorum was not present when the act complained of was done. Where there is a legally constituted meeting, the acts of a majority of those present are the acts of the corporation, though such majority is less than a majority of the total number of stockholders or shares.

5. In the absence of statute or by-laws otherwise providing the stockholders may select a chairman to preside at the annual meeting by a viva voce vote. A stock vote is not required to give validity to the meeting; but even where a stock vote is demandable, a request therefor coming after the organization has been effected is too late.

6. A by-law of a corporation was as follows: "The holders of a majority of the stock issued shall constitute a quorum for the transaction of business at any regular or special meeting. If no quorum be present at any meeting so called a less number may meet and adjourn from time to time until a quorum be present." *Held,* that there was nothing in the by-law which authorized a portion of the stockholders to withdraw from a meeting in order to break a quorum.

7. A corporation had 2,081 shares issued and outstanding at the date of an annual meeting. A chairman was elected at the meeting by a viva voce vote. Subsequently certain of the stockholders demanded that a stock vote should be taken for the chairman, and when this was refused withdrew in order to break the quorum. Before their withdrawal there were 1,887 shares represented in person or by proxy. After the withdrawal of these members, a vote was taken for officers, and all of the shares, numbering 992, then present were voted for the officers elected. *Held,* that the election was valid, and that the withdrawing members had no standing to maintain quo warranto proceedings against the officers elected to deprive them of their offices.

Argued Jan. 9, 1910. Appeal, No. 246, Jan. T., 1911, by plaintiffs, from order of C. P. No. 1, Phila. Co., Dec. T., 1909, No. 5,073, in entering judgment for respondents in case of Commonwealth ex rel. Jerome H. Sheip et al. v. Asa W. Vandegrift et al. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Quo warranto. Demurrers to respondents' answers to information.

MAGILL, J., found the facts to be as follows:

This matter is before the court on demurrer by relators to answers filed by respondents to an information for quo warranto. The answers in question are responsive and under oath, and by the demurrers filed the statements contained therein are admitted to be true. Upon the pleadings it appears that an annual meeting of the stockholders of the Philadelphia Veneer & Lumber Company, Incorporated, was held January 20, 1910, at the time and place prescribed by the by-laws, which meeting was attended by eleven stockholders owning 1,887 shares of a total issue of 2,081 shares. Four of the relators, Jerome H. Sheip, S. S. Koller, Stanley S. Sheip and Charles H. Kunkel, were present at the meeting.

Article X, sec. 3, of the by-laws of the corporation provides, "The holders of a majority of the stock issued shall constitute a quorum for the transaction of business at any regular or special meeting. If no quorum be present at any meeting so called, a less number may meet and adjourn from time to time, until a quorum be present." A quorum was present at the meeting which was duly organized, and at which Asa W. Vandegrift, one of the respondents, was elected chairman. As shown by the answer, after the election of the chairman, Stanley S. Sheip, one of the relators, requested that a new election for chairman of the meeting be had by stock vote. He was informed by the chairman that his request was too late as the meeting had already elected its chairman, and thereupon, without appealing from the decision of the chair, or taking any other method of questioning the ruling, said Stanley S. Sheip, Jerome H. Sheip, S. S. Koller and Charles H. Kunkel, the relators, withdrew from the meeting, having previously notified the chairman that unless they were permitted to have a new election by stock vote on the question of chairman, they would withdraw for the purpose of making no quorum, and prevent the further transaction of business. After the relators above named had withdrawn from the meeting those remaining pro-

ceeded to an election, and respondents were elected to the several offices as set forth in the information and answer, the chairman having first appointed a judge and two tellers to conduct the election, who were duly sworn, etc., at which election, as shown by the answer, 992 votes were cast for each of the candidates, being a majority of the total number of shares represented at the meeting at the time of organization, but less than a majority of the whole number of shares issued. It is evident that the difficulty arose through the efforts of two factions of the stockholders to secure control of the offices of the corporation, and the relators, Jerome H. Sheip, S. S. Koller, Stanley S. Sheip and Charles H. Kunkel, clearly appear to have withdrawn from the meeting for the sole purpose of preventing an election, and having done so, they subsequently called a special meeting of the stockholders on February 11, 1910, for the purpose of electing officers, and at an election held on that date by themselves, and acting through proxies for other stockholders, elected themselves as officers of the corporation. This meeting was called by them, or some of them, upon the assumption that they, at the time of the call for the special meeting, continued to be directors of the corporation by virtue of their election in the previous year, and that they held over as such directors by reason of the alleged fact that the directors elected at the meeting of January 20, 1910, were not duly and properly elected.

*Error assigned* was in entering judgment for respondents.

*Alex. Simpson,* with him *Francis Shunk Brown* and *Ira Jewell Williams,* for appellants.—If a majority withdraw so as to leave no quorum the minority have no power to act: Brown v. District of Columbia, 127 U. S. 579 (8 Sup. Ct. Repr. 1314); Dingwall v. Common Council of Detroit, 82 Mich. 568 (46 N. W. Repr. 938); State v. Porter, 113 Indiana, 79 (14 N. E. Repr. 883); Lockwood v. Bank, 9 R. I. 308; Damon v. Granby, 19 Mass. 345.

The cases cited by respondents are those in which a quorum was present, though not voting, whereas here admittedly no quorum was present; or were cases where the question was whether or not a majority could elect at a different place than that provided by law.

*Frederick J. Shoyer*, with him *Henry Arronson*, for appellees.—The appellants should have acted at the meeting of January 20, 1910, which was the legal meeting of the corporation.    Preliminaries of organizing this meeting were proper and legal: Landers v. Frank St. M. E. Church, 114 N. Y. 626 (21 N. E. Repr. 420); Stebbins v. Merritt, 64 Mass. 27.

The minority have a right to insist that the stockholders meet and elect directors on the day fixed by the by-laws: Oldknow v. Wainright, 2 Burrows, 1017; Rex v. Miller, 6 T. R. 268; State v. Chute, 34 Minn. 135; Forsyth v. Brown, 13 Pa. C. C. Rep. 576; s. c. 33 W. N. C. 72.

The majority cannot arbitrarily withdraw after organization: Com. v. Patterson, 158 Pa. 476; Haskell v. Read, 68 Neb. 107 (96 N. W. Repr. 1007); Baird v. Bank of Washington, 11 S. & R. 411; Juker v. Com. ex rel., 20 Pa. 484.

OPINION BY MR. JUSTICE ELKIN, May 23, 1911:

This is a proceeding by quo warranto to test the right of respondents, or either of them, to hold the respective offices of president, vice president, secretary and treasurer, and director of a certain corporation named in the suggestion for the writ.    The controversy grows out of alleged irregularities in holding the annual meeting of stockholders for the purpose of electing a board of directors.    If this meeting was regularly organized in the first instance with a quorum present, and subsequently some of the shareholders for the purpose of breaking the quorum and preventing an election at the time and place fixed by the by-laws, capriciously and without just cause withdrew, the

decision of the questions raised by this appeal under the great weight of authority must be adverse to the contentions of appellants. The by-laws of the corporation in question provide, inter alia, as follows: "The holders of a majority of the stock issued shall constitute a quorum for the transaction of business at any regular or special meeting. If no quorum be present at any meeting so called a less number may meet and adjourn from time to time until a quorum be present." It is argued for appellants that the by-laws of a corporation, when duly enacted, are written into the charter and are a part of the fundamental law of the corporation, binding not only upon the corporators and the corporation, but upon those dealing with it. With this proposition we can have no quarrel because it is settled law under the authority of our own cases: Millward-Cliff Cracker Co.'s Estate, 161 Pa. 157; Wayne Title & Trust Co. v. Electric Railway Co., 191 Pa. 90; Worthington v. Electric Railway Co., 195 Pa. 211. It is contended that the legal effect of the by-law under consideration in the present case is to require not only a majority of the stock issued to be represented when the meeting is organized, but that no business can be transacted if at any time after the organization and during the course of the meeting a sufficient number of shareholders withdraw to reduce the number of shares remaining below the amount necessary to constitute a quorum. In other words, that the plain meaning of the by-law is that no corporate act can be done except at a time when a majority of the stock issued is present. The second provision of the by-law is called to our attention for the purpose of strengthening the argument. If no quorum be present a less number may meet and adjourn from time to time until a quorum is secured. This provision of the by-law, it is argued, must be read in the light of the ordinary rules of parliamentary practice, which means that if at any time the number present becomes less than a quorum, there is no power to do anything except to adjourn until a quorum be present. As correct statements of general principles of law, many

of these propositions cannot be gainsaid.  The validity of a corporate act is as a general rule tested by the requirements of the by-laws, and when there is a positive direction to do an act in a particular way or in some specific formal manner, failure to observe the requirements imposed by the by-laws, may and as a rule does render the act invalid. In the present case several things must be taken into consideration in disposing of the questions raised.  In the first place, the by-laws do not provide how many shares of stock shall be required to be voted in order to make a valid election of members of the board of directors.  The by-laws only provide how much stock shall be present at the meeting to constitute a quorum.  As an illustration, there were 2,081 shares issued and outstanding in the present case at the date of the annual meeting.  To constitute a quorum it was necessary to have at least 1,041 shares present, and if there had only been that amount of stock represented, 521 shares would have been sufficient to carry the election of each director.  The learned court below has found as a fact that 992 shares were voted for each of the respondents.  Appellants undertake to show by the figures that this was an erroneous finding.  The discrepancy may be explained upon the theory that some shares were voted when the ballot was taken that had not been noted at the convening of the meeting.  However, in the view we take of the case, the discrepancy pointed out is immaterial.  Whether respondents received 992 or a less number of votes, they received not only a majority of the votes represented by the stock voted, but the entire vote of all the shares participating in the election.  When appellants withdrew from the meeting and refused to participate in the election, they forfeited the right to have their stock counted in the election of a board of directors. They must stand or fall on the ground that they had the legal right to withdraw and refuse to participate in the meeting, and when they did so withdraw, thus leaving less than a majority of all the stock issued remaining when the final ballot was taken, the election of the respond-

ents was invalid because a quorum was not then present. This brings us to the pinch of the case. When the meeting convened, 1,887 shares out of 2,081 were represented in person or by proxy. This was 846 shares more than were required to constitute a quorum. A majority of all the stock issued being represented, it was clearly the duty of those present to organize the meeting and proceed with the election. This was done. The president called the meeting to order and directed the secretary to note those present and the number of shares represented either in person or by proxy. He then stated to the meeting that the first business in order was the nomination and election of a chairman. Two nominations were made, one by the relators and the other by the respondents. A motion to close the nominations was then made and carried. Without objection from anyone the meeting proceeded to elect a chairman by a viva voce vote with the result that Mr. Vandegrift was declared elected. There was no call for a division or a poll of the vote. After the chairman had been thus declared elected, one of the appellants requested that a new election by stock vote be held. The chairman announced that the request came too late, as the meeting had already been organized. No appeal was taken from the ruling of the chairman, but the stockholder who made the request stated that if a new election of a chairman by stock vote was not allowed, the faction represented by him would withdraw for the purpose of breaking a quorum and to prevent any further business being transacted. In accordance with the suggestion made they did withdraw and refused to participate in the election of a board of directors at that meeting. Before withdrawing they were notified that the election of directors would be by stock vote. After their withdrawal, the meeting having already been organized, those stockholders who remained proceeded in a regular and orderly manner with the election. A judge and two tellers were appointed and duly sworn to perform their duties according to law. Nominations were made in the regular way and a stock vote by ballot taken

with the result that 992 shares were returned as having been voted for each of the appellees, who were declared duly elected directors.

The case therefore turns upon the question of the right of the appellants to withdraw from the annual meeting under the circumstances hereinbefore referred to for the purpose of breaking a quorum. Fortunately, we are not left in the position of groping our way in the dark for an answer, but have the light of credible authority as our guide. 2 Cook on Corporations (6th ed.), sec. 606, among other things, says: "After the meeting is organized the majority cannot withdraw and organize another meeting. Where a part of the stockholders secede from the meeting and hold another on the pretext of disorder, but in fact by reason of a previously designed plan, the election by the seceders is not legal." 1 Thompson on Corporations (2d ed.), sec. 910, states the rule in the following language: "If a meeting is once organized and all parties have participated, no person or faction can then, by refusing to vote or by withdrawing, thereby defeat the organization or render the proceedings invalid, and neither can seceders organize another meeting and hold a valid election. Even a majority cannot withdraw after the meeting is organized and hold a valid election." 1 Savidge on the Formation and Management of Corporations in Pennsylvania, sec. 725, expresses the view that, "It seems after a meeting of a corporation is organized, the majority cannot withdraw and organize another meeting unless it be done in good faith to escape disorder." Mr. Justice MERCUR in the Appeal of Gowen, 10 W. N. C. 85, speaking for this court, said: "Those who voluntarily absent themselves from a meeting duly called for an election must recognize the validity of an election regularly made by those who do attend. Such absentees present no ground for relief from their misfortune or their folly." Stockholders who attend a meeting and then without cause voluntarily withdraw are in no better position than those who voluntarily absent themselves in the first instance. In Com, ex rel,

Langdon v. Patterson, 158 Pa. 476, Mr. Justice MITCHELL in discussing the rights of stockholders to organize a meeting under facts somewhat similar to those in the case at bar, said, inter alia: "The call to withdraw was not to all the stockholders, or even to all desiring an orderly and legal election, but to the party of the relator, and was so understood, both by themselves and the others. It was without any justification in law, and there was no sufficient evidence to submit to the jury in that behalf." In the present case there was no justification in law for the withdrawal and the call was, not to all the stockholders, but to the party of the relators. There was no disorder of any kind and as we see it nothing to be gained by the withdrawal except to break a quorum, and this is not a sufficient cause. Even the majority after the regular and legal organization of the meeting, did not have the right to capriciously and without justifiable cause withdraw for the declared purpose of breaking a quorum in order to prevent an election. In this connection, it is worthy of comment, that the duty of holding an annual election is imposed by statute, and the time and place for holding it, are fixed by the by-laws. The duty as to the time and place of holding the election is quite as imperative as the provision relating to the amount of stock necessary to constitute a quorum. It was not only the privilege of appellants to participate in the annual election of directors but it was a duty imposed by law upon them. They should have remained in the meeting to exercise their privileges and perform their duties. When they did not do so but without sufficient cause withdrew, they are not in position to complain about the acts of those who remained and performed their duties in a regular and lawful manner.

A stockholder, not voting, cannot get relief from the courts if he voluntarily refrain from voting, if he had an opportunity, and his claim of right to vote was not excluded: State v. Chute, 34 Minn. 135. In the case at bar the right of appellants to vote their stock at the election for directors was not denied. They could have remained in

the meeting and voted their stock for candidates of their own selection. In the Argus Printing Company case, 1 N. D. 434, the court in discussing this question, said: "A minority must have a right to insist, after a meeting is organized, the majority shall not withdraw from it and organize another meeting at which the minority must appear or lose their rights. Once concede the right, and there is no limit to the number of wrecked meetings which may, at the caprice of a majority, precede the transaction of any business."

We have given due consideration to the very able argument of learned counsel for appellants, and have examined with an open mind all of the authorities and decisions relied on to support it, but have not been convinced of the wisdom or necessity of applying the no quorum rule to the facts of the present case. In our opinion the sounder and safer rule, as above indicated, is that even a majority cannot capriciously withdraw after the meeting is legally organized for the very purpose of breaking a quorum, and then ask the courts for relief on the ground that a quorum was not present when the act complained of was done. Where there is a legally constituted meeting, the acts of a majority of those present are the acts of the corporation, though such majority is less than a majority of the total number of stockholders or shares: 6 Am. & Eng. Ency. of Law (2d ed.), 1004. In the present case there was a legally constituted meeting when the chairman was elected because several hundred shares more than a majority of all the stock issued, as the by-law required, was present before an organization was attempted.

When no provision is made in the by-laws for a chairman, the meeting itself should proceed to select one. It frequently happens that provision is made for the president to preside at the stockholders' meeting, but when no such provision is made, a chairman may be selected by the stockholders at the organization of the meeting. The chairman so selected need not necessarily be a stockholder, nor is there any particular formality required in

his selection.    The ordinary parliamentary usages apply
to meetings of this character: 1 Thompson on Corpora-
tions (2d ed.), sec. 905.    In discussing this question, the
supreme court of Massachusetts said: "There is nothing
in the nature of the office, which requires him to be a
stockholder, although from convenience the usage is to
elect one of the stockholders to perform the duty.    But
his duties, like those of a clerk, are merely ministerial, and
can in no way affect the validity of the doings of the cor-
poration or the rights of those claiming under them:"
Stebbins v. Merritt, 64 Mass. 27.    In the absence of a
statute or by-law otherwise providing, stockholders may
select a chairman to preside at the annual meeting by a
viva voce vote.    A stock vote is not required to give valid-
ity to the meeting.    In the present case even if a stock
vote was demandable, the request coming after the organ-
ization had been effected, was too late.

Judgment affirmed.