FLORENCE M. DUFFY,

Complainant Below, Appellant,

*vs.*

LOFT, INCORPORATED, a corporation of the State of Delaware,

Respondent Below, Appellee.

*Supreme Court, on Appeal, Dec. 22, 1930.*

PENNEWILL, C. J., and RICE, HARRINGTON, RICHARDS, and RODNEY, JJ., sitting.

*Daniel O. Hastings* and *Ayres J. Stockly*, of the firm of Hastings, Stockly & Morris, for appellant.

*Clarence A. Southerland*, of the firm of Ward & Gray, *George N. Davis*, and *Charles C. Keedy*, and *Arthur F. Driscoll*, of the firm of O'Brien, Malevinsky & Driscoll, of New York City, for appellee.

PENNEWILL, C. J., delivering the opinion of the court:

The case before the court involves the validity of the election of directors of Loft, Incorporated, a corporation of this State, at an annual meeting of stockholders held on March 19, 1930. The determination of the question depends upon whether there was a majority of the stock of the corporation, represented in person or by proxy, at the meeting.

There are two other questions raised which are preliminary to the one mentioned, and they are,

1. Whether the meeting was legally held in view of the fact that a stockholder was elected chairman when the president of the company was present and insisting on acting as chairman, and

2. Whether the chairman, if one could be elected, had to be elected by a stock vote?

The only facts that need be stated at this point are the following:

The annual meeting called for twelve o'clock March 19th was opened at the proper time by Mr. Miller, president of the company, who announced that he wanted to make a statement or report before calling the meeting to order. This was vigorously objected to by some of the two or three hundred persons present, who insisted that the procedure of such a meeting fixed by the by-laws should be observed, and that the president might make

his speech at the proper time. Such procedure they said was, first, calling the meeting to order, and second, the election of a chairman. Mr. Miller refused to recede from his position, being determined to make his statement to the stockholders before anything else was done. He positively refused to entertain any motion for the nomination or election of a chairman and insisted there was no necessity for such an election because he, as president, and he alone had the right to preside. He demanded a roll call to ascertain whether a majority of the stockholders were present and this was resisted. There ensued a great deal of plain and vigorous discussion, mainly by the attorneys and a few of the stockholders, and nothing resulted but confusion and bad feeling for a considerable time. Mr. Miller declined to put any motions or nominations, and likewise declined to relinquish the chair. The stockholders present at the meeting were, for the most part, divided into two factions, which may be designated as the Guth faction and the Miller faction. The former faction claimed that the meeting had a right to elect a chairman and the latter disputed it. Sometime during the progress of the long discussion it was said by the attorney for the Miller faction that even if a chairman could be elected it would have to be done by a stock vote, and that would necessitate a roll call and an examination of the proxies. The attorney for the Guth faction denied this, claiming that the election could be by a *viva voce* vote, taking his stand on the by-law provisions for the order of business, viz.: 1, Call of the meeting to order; 2, Election of a chairman. He argued that an examination of the proxies would take hours of time, and besides, it was provided for later in the order of business.

After much time had been consumed in discussion, the president maintaining his position and declining to put any motion, a stockholder moved that nominations be closed. There were two names in nomination for chairman, one of whom was a Dr. Sullivan; and the same stockholder said, "All in favor of Dr. Sullivan stand" and practically all present thereupon stood up. Dr. Sullivan took the chair and the meeting proceeded. Mr. Miller still insisted there was no necessity for the election of a chairman, and stated that if one was elected he must be elected by a majority of the stockholders. He also insisted that

he had not relinquished the chair. Soon thereafter Mr. Miller and his friends left the meeting. A motion was then made and carried that a committee be appointed to see the present officers of the company and request them to produce the minutes of the previous meeting and all the books and documents of Loft, Inc. The committee reported that Miller refused to recognize their authority, to answer any questions, whereupon the chairman announced that the persons in question refused all information, all books and everything else in their possession belonging to Loft, Inc. Mr. Miller was waited upon later by a committee from the meeting and requested to return and make his report, but declined, saying, "I refuse to address the meeting for the reason that it is illegal and improper."

It was the legal duty of president Miller and other officers to produce at the meeting a list of stockholders and the original or duplicate stock ledger, but they were not produced, and presumably were taken away when Miller and his friends retired from the meeting. At any rate they refused to produce any books or papers belonging to the corporation when requested to do so. As officers of the corporation they had control of its books and papers.

After the withdrawal of Miller and his friends the meeting proceeded with Dr. Sullivan acting as chairman and in the course of its business elected a new board of directors.

It would be interminable to attempt to narrate all the proceedings of the tumultuous meeting referred to, but we think the facts stated are fairly gathered from the stenographic report of the meeting which appears in the record, and which both sides agree is as nearly accurate and complete as it was possible to make under the conditions there existing.

On the same day that the meeting was held, and while it was in progress, one Florence M. Duffy, a stockholder of Loft, Inc., presented a petition to the Chancellor alleging that various stockholders attended in person or by proxy the meeting held on March 19th, but no election was held and the meeting was adjourned; that it would be difficult if not impossible to hold a valid election under the conditions unless a Master was appointed. The petitioner, therefore, prayed that the Chancellor appoint a

Master to call and hold a special meeting of the stockholders for the election of a new board of directors. On the same day there was filed in the Court of Chancery what purported to be an answer on behalf of the corporation, admitting the allegations of said petition and joining in the prayer thereof. This answer, signed by Alfred R. Miller, was alleged to have been made in pursuance of a resolution adopted by the board of directors at 4 P. M., March 19, 1930. Upon said petition and answer being presented the Chancellor made an order appointing a Master to hold an election. A second answer was filed on March 20, 1930, by the Guth faction, in the name of Loft, Incorporated, denying the allegations of the Duffy petition, and averring that a stockholders' meeting was held on March 19th; that a quorum was present; that ballots were cast and directors elected, and that there was therefore, no basis for the appointment of a Master to conduct another meeting. The answer further averred that there was no legal meeting of the board of directors held on March 19th, because the persons who presumed to constitute the board had ceased to be directors and their successors had been duly elected. On March 24, 1930, the Chancellor made an order directing that the order made on March 19th appointing a Master to hold a meeting of stockholders for the election of directors be vacated.

On March 25th the Chancellor made an order that the answer of Loft, Incorporated filed by the Guth faction be considered as framing an issue as to whether an election of directors, as averred in that answer, had been held on March 19, 1930.

Upon a petition filed by each party the Chancellor made an order requiring the production of proxies, the minute books of the corporation, the official list of stockholders, the stock ledger and all records of stock purchased or sold by Loft, Incorporated, between October 1, 1929 and March 19, 1930.

The Chancellor appointed Albert L. Massey Special Master "for the purpose of checking and verifying said proxies, ballots and slips of paper, with the duplicate stock ledger of Loft, Inc., in the possession of Corporation Trust Company of America, the resident agent of said Loft, Inc., and of ascertaining the

correct number of shares of stock of Loft, Inc., represented by said proxies and slips of paper."

It is unnecessary to incorporate the Master's report, but two facts may be fairly gathered from his tabulations, viz.: That the Guth faction had substantially more votes than the Miller faction, and that unless the proxies of both factions were counted a majority of the stock of the corporation was not present and a quorum did not exist at said meeting.

The main question to be determined, as above remarked, is, whether the board of directors chosen at the meeting of March 19, 1930, was legally elected.

We will first consider the preliminary questions already referred to.

Could a chairman be elected by the stockholders to conduct the meeting, the president being present and wishing to preside? The determination of this question depends upon the meaning of two by-laws of the corporation when considered together. One by-law provides that the president shall preside at all meetings of the stockholders, unless the stockholders shall appoint a chairman who may be the president. Another by-law has reference to the order of business and provides, as follows:

1. Call to order;
2. Election of a chairman, if necessary;
4. Presentation and examination of proxies;
6. Reports of officers;
7. Election of directors.

It is clear that if the first mentioned by-law stood alone there could be no doubt of the right of stockholders to choose some one of their number, other than the president to act as chairman at a stockholder's meeting. But it is argued that the other by-law, which provides for the election of a chairman, *if necessary*, qualifies the former. We think the two by-laws are not conflicting. They mean that the stockholders may elect a chairman, other than the president, whenever they deem it necessary to do so. As the Chancellor said in his opinion:

"The presence of the president ready and willing to preside cannot be said to oust the stockholders of their right to choose a chairman on any such theory that the president's presence makes such a choice unnecessary."

There is good reason for giving to stockholders the power to choose a chairman, even when the president is present; and especially so if there is a contest for the control of the meeting by two factions, and the president is identified with one of them. The chairman is a very important person in such a situation and the majority should have the power to control the meeting. This court is of the opinion that the Chancellor correctly held that the stockholders' meeting of March 19th was not invalid because a stockholder, other than the president, was chosen as chairman. And we also agree with the chancellor in holding, that, in view of the president's refusal to put any motion looking to the election of a chairman and his disregard of the overrulings of his decisions, the stockholders had the right to vote on the election of a chairman when the question was put to them by one of their fellows. .

But it is argued that even if the stockholders had the right to elect a chairman the election was illegal because it was effected by a *viva voce* vote, when it should have been by a stock vote and by ballot. The by-laws of the corporation provide that:

"The vote in election of directors, and, upon demand of a stockholder present in person or by proxy, the vote on any question, shall be by a stock vote and by ballot."

Under this by-law it is clear that a vote on any question other than an election of directors need not be a stock vote, and by ballot, unless there is a demand by a stockholder for such a vote. This is not denied. On page 8 of appellant's brief, after referring to *Section* 17 of the *Delaware Corporation Law* (*Rev. Code* 1915, § 1931, as amended by 36 *Del. Laws, c.* 135, § 8) which provides that each stockholder shall be entitled to one vote for each share of voting stock which he holds, we find this admission:

"In this connection it is true that in the absence of objection a chairman might be elected in any manner agreed upon."

By "objection" is here meant, of course, objection to a *viva voce* vote and a demand for a stock vote.

The by-law above quoted makes it clear that a stockholder has the right to demand a stock vote for the election of a chair-

man, and it is equally clear that in the absence of such a demand a chairman could be elected by a *viva voce* vote.

The question, therefore, with respect to the election of the chairman of the meeting of March 19, 1930, is narrowed down to this: Was there a demand by any stockholder that the election of the chairman should be by a stock vote? There were objections made by Mr. Miller and his friends to the election of any one as chairman, and such objections continued to be made from the time the meeting began till the Miller faction retired. But such objections were made because Mr. Miller claimed that he alone had the right to preside and not because a *viva voce* vote was proposed. But because the point now being considered was pressed so vigorously at the argument, we have taken the pains to carefully examine the record to ascertain whether any stockholder demanded a stock vote on the election of the chairman of the meeting. Our examination has failed to disclose any such demand. Mr. Miller frequently demanded a roll call, but, apparently, this was only for the purpose of ascertaining whether a majority of stockholders was present. Mr. Miller did say, sometime before the election, that if a chairman was elected it must be by a majority of the stockholders. Counsel for the Miller faction, who was not a stockholder, did declare during the discussion and before the election, that if a chairman was elected it must be by a stock vote; but neither he nor anyone else demanded at the time that nominations were made or when the vote thereon was taken that the election should be by a stock vote. The Chancellor found, as a fact, that no such demand was made, and while this court is not bound by his finding, we nevertheless have respect therefor and should not reverse the finding if it was warranted by the evidence. Without regard to the Chancellor's decision, we have reached the same conclusion after an independent examination of the record.

We come now to a consideration of the principal point in the case, viz.: Was there a majority of the capital stock of Loft, Incorporated present, in person or by proxy, in the meeting on March 19th at which the directors were elected? We will consider later the question, whether at a meeting regularly called for the election of directors, stockholders in attendance upon

such meeting can, by voluntarily withdrawing therefrom, break a quorum and thereby prevent the election of directors.

Was there a majority of stock represented at the meeting? The Chancellor found there was, and this court is of the opinion that the evidence warranted his finding. The law of the State provides that directors shall be elected at an annual meeting of the stockholders and an effort by the majority of the stockholders present at the meeting to carry out the law and accomplish the intended result should not be defeated by a minority seeking to prevent the election, when it is clear that a majority of the stock of the corporation was present, either in person or by proxy, at a meeting of stockholders regularly called for the purpose of electing directors, and that an election was held, it should not be declared invalid because certain stockholders holding proxies for stock necessary to make a quorum, and in attendance at the meeting, declined to submit their proxies to the meeting. This is what happened at the meeting involved in the present case. Obviously the Miller faction did not want an election and did all they could to prevent it.

There can be no doubt from the record that a majority of the stock of the corporation was present in person or by proxy at the stockholders' meeting on March 19th in which both factions took a very active part before the withdrawal of the Miller people. It was only when it became apparent that the latter faction could not prevent the organization of the meeting and the election of directors that they declined to submit their proxies and withdrew from the meeting. If a majority of stock is represented certainly the inability of the meeting to examine the proxies of an opposing faction should not in itself invalidate an election of directors held at such meeting.

It appears from the report of the Special Master made to the Chancellor that the proxy committee of the Guth faction and of the Miller faction held proxies representing much more than a majority of the outstanding stock of the corporation, not counting the stock voted by stockholders in person. The record shows that the proxies held by the Guth committee were presented, and that those held by the Miller committee were not submitted to the meeting. But members of the Miller com-

mittee were present at the meeting and took a very active part in its proceedings prior to their withdrawal therefrom. Counting the stock represented by the Guth committee and the stock represented by the Miller committee, one or more of whose members were present at the meeting for some time before the election, there was undoubtedly a majority of the stock of the corporation represented at the meeting at which directors were elected. If the persons holding the proxies of absent stockholders attended the meeting, as they were authorized to do, the fact that the proxies were not examined should not invalidate the election of directors at such meeting.

The Chancellor in his opinion says:

"The proxies held by the Miller committee were never presented to the meeting. The record fails to show where they were at the time of the meeting. They are now in this court, however, having been produced in response to an order in that behalf, so there can be no doubt upon the fact that 232,840 shares of stock had designated the three gentlemen known as the Miller committee to attend the meeting as their agents and to vote thereat."

As before remarked, the law requires that directors shall be elected at an annual meeting of stockholders, and it is the duty of those holding proxies to attend the meeting as well as vote the stock they represent. The election should not be prevented by objections of a purely technical character interposed by stockholders who are disappointed or dissatisfied because of their inability to control the meeting. We agree with the Chancellor in his statement that:

"Reasonable rules ought to prevail in aid of the accomplishment of the statute's purposes, and a certain degree of liberality in favor of a meeting ought to prevail. To take any other view would be to encourage the prolongation of internal strife between rival factions and keep the corporation's affairs in such a state of confusion and turmoil that the business which it was organized to conduct would inevitably suffer to the damage of its stockholders. Where an extensive campaign has been carried on by rival groups for the votes of stockholders and the arguments pro and on have been made, the parties interested should submit to a count and let the majority prevail. If such a course is not persued, if after the contest has been waged one side defeats a decision by mere tactical maneuvers, the whole business must be gone through with again with its consequences of expense and disturbance."

The position of the Chancellor in this regard is clearly supported both by reason and authority.

But one question remains to be considered, and that is, if there was a quorum present at the meeting, can it be broken by withdrawals? This question has been decided in our own State in the case of *Hexter v. Columbia Baking Co.*, 16 *Del. Ch.* 263, 145 *A.* 115. It is true that in the *Hexter Case* the stockholders who withdrew were the owners of the stock they represented, and in the present case they were the agents of the owners of the stock. But we can see no difference in principle. If the owners of the stock, the principals, could not break a quorum by withdrawing from the meeting, certainly their agents could not do it by withdrawing. As the Chancellor aptly said:

"The fact that they [the agents] were not the owners but only the representatives of the owners does not, under the circumstances shown, make any difference in the result. As they had the power and did take their principals into the meeting, so they could not take them out of the meeting, just as the principals could not have legally taken themselves out if they had been personally present and had done what their representatives did."

We do not understand that the appellant questions the soundness of the decision in the *Hexter Case*, but only its application to the facts in the present case. Being satisfied from the record that there was no justification for the withdrawals in this case, we think the decision in the *Hexter Case* applies. It is the decisional law of the State and there is no reason for any further discussion of the question.

The decree of the Court below is, therefore, affirmed.