TEXTRON, Inc.

v.

AMERICAN WOOLEN CO.

Civ. A. No. 54–389.

United States District Court
D. Massachusetts.

May 14, 1954.

Supplemental Opinion June 2, 1954.

Charles C. Cabot, John T. Noonan, Henry V. Atherton, of Herrick, Smith, Donald, Farley & Ketchum, Boston, Mass., for Textron, Inc.

Joseph B. Ely, Charles W. Bartlett, John O. Parker, of Ely, Bartlett, Thompson & Brown, Boston, Mass., for American Woolen Co.

ALDRICH, District Judge.

This case comes up for hearing on the return of a temporary restraining order. The plaintiff is a stockholder of the defendant. It seeks to enjoin the continuation of an adjourned stockholders' meeting, and more particularly the next proposed order of business, which is the announcement of the results of a vote for officers and directors. I pass for present purposes the question of whether the complaint is vulnerable for failure to comply with Fed.Rules Civ.Proc. rule 23(b), 28 U.S.C.A., because I assume from statements of counsel that any such defect can, if necessary, be cured by appropriate amendment.

The averments of the complaint fall into two categories, both of which relate to proxies submitted by the so-called Smith stockholders' group. The first charge is that all of the Smith proxies were invalid because the solicitation material violated the provisions of the Securities Exchange Act of 1934, 15 U.S. C.A. § 78a et seq. The second is that substantial numbers of these proxies had been revoked, or were forged. The alleged violations of the Securities Exchange Act are made to appear from specimens of the circulated material complained of and the second charge is supported in part by the affidavit of a recognized handwriting expert.

The court is faced at the outset with the question of its jurisdiction. The plaintiff asserts two grounds,—the Securities Exchange Act, the jurisdictional portion of which is 15 U.S.C.A. § 78aa, and diversity of citizenship. The pertinent portion of Sec. 78aa reads as follows:

"The district courts of the United States * * * shall have exclusive jurisdiction of violations of this chapter of the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder."

In order to consider the application of this section it is necessary to examine in more detail the nature of the violation of this act that the plaintiff alleges. In substance the plaintiff says that the Smith proxy solicitation material clearly indicated that the Smith group was unalterably opposed to present management and that the proxies would be voted for candidates other than management's. Examination of the material suggests that this is at least a reasonably possible interpretation. Plaintiff asserts, however, that at the time of solicitation the Smith group in fact had "no fixed intention" *not* to vote for management, and, eventually, did vote for management. I assume for present purposes, without deciding, that the solicitation by the Smith group accordingly either contained false or misleading statements, or omitted material facts in this respect in violations of Rule X–14A– 9 of the Securities and Exchange Commission.

It appears, however, that the Smith proxies were not needed to re-elect management, and that they were not so counted (apart from the question of a quorum hereinafter to be considered). Nor does it appear that management would have failed to receive a majority of the votes had the Smith proxies been cast for any other candidates. Under these circumstances, whatever criticism the stockholders who gave their proxies to the Smith group, which stockholders

do not include the plaintiff, may have a right to direct against Smith, it seems to me that the present plaintiff has only one possible complaint, now to be considered; namely, whether it was proper to consider the Smith proxies in determining the existence of a quorum. The plaintiff asserts that without these proxies no quorum existed.

■ As already stated, the vice, if any, affecting the proxies, related to the indication of the manner in which they were to be cast with regard to officers and directors. This vice, whether regarded as a false statement of fact (in the form of intention), or as a failure to disclose a material fact (that this intention was not "fixed"), went only to the exercise of the proxies in the particular matter so represented. It did not, in my opinion, render the proxies entirely void, or invalidate their authority to attend the meeting and vote on the other matters on which they were instructed. I rule that it did not, under the circumstances of this case, give to this plaintiff the right to invoke the jurisdiction of this court under Title 15, § 78aa on the issue of whether they could be counted for the purposes of determining a quorum.

■ This result may be further tested by considering a simple hypothesis. Suppose that Smith had not violated Rule X–14A–9, had always intended to vote against management, and had in fact done so. Or suppose that these stockholders had themselves gone to the meeting and voted against management. The consequences, so far as the election was concerned, would have been the same. I do not question that in a proper case a private party affected may complain of a violation of the rules of the Securities and Exchange Commission, cf. Phillips v. The United Corp., S.D.N.Y. July 30, 1947, C.C.H.Fed.Sec.Law Rep., Para. 90,-395, 3 S.E.C.Jud.Dec.1483; Tate v. Sonotone Corp., S.D.N.Y. April 15, 1947, 3 S.E.C.Jud.Dec.1342; Remar v. Clayton Securities Corp., D.C.Mass., 81 F.Supp.

1014; but this plaintiff, on the circumstances alleged, was not such.

The complaint, accordingly, must stand or fall on the question of diversity jurisdiction. Diversity of citizenship is alleged between the plaintiff and the defendant. The plaintiff further alleged the jurisdictional amount. While the defendant did not initiate the question, I feel that the court must itself consider, McNutt v. General Motors etc. Co., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed 1135, whether, either on the basis of the complainant's supporting allegations, or on such additional matters as were properly called to its attention it is possible to substantiate this amount.

■ The fundamental question in the case, reduced to its barest terms, is whether some or all of the Smith's proxies are not to be counted, and if so, whether the remainder left enough to constitute a quorum. It has been said that the matter in dispute must be money, or some right, the value of which in money can be calculated and ascertained. Whitney v. American Shipbuilding Co., D.C.Ohio, 197 F. 777. What is the matter in dispute? The defendant asserts that it is the qustion of whether four of its directors are to be re-elected for a period of three years, a matter of insubstantial, or immeasurable, value. The plaintiff asserts, among other things, that what is involved is a future company program, allegedly harmful and costly, contemplated by these directors, continuing the company's current losses, and affecting the value of its investment.

■ It seems to the court, on consideration, that the value of the matter in dispute in this connection is the value of the property to be protected, cf. Bitterman v. Louisville & Nashville R. R., 207 U.S. 205, 28 S.Ct 91, 52 L.Ed. 171, which in turn is at least the value of the plaintiff's share in the company, control, or partial control of which may depend upon the outcome of the election. Analogy may be drawn to the receivership cases, such as Coskery v. Roberts

& Mander Corp., 3 Cir., 189 F.2d 234. See also Johnson v. Ingersoll, 7 Cir., 63 F.2d 86; Harris v. Brown, D.C.Ky., 6 F. 2d 922. A case closely in point, and supporting jurisdiction, is Walsh v. Boston & M. R. R., D.C.Mass., 87 F.Supp. 934. See also, although not specifically discussing the jurisdictional amount, Steinberg v. American Bantam Car Co., D.C. Pa., 76 F.Supp. 426.

It is conceded that the value of the plaintiff's stock in the defendant, something over 25% of the total shares outstanding, is far in excess of $3,000. I consequently find that the requisite diversity of jurisdiction exists. For reasons stated at the previous hearing, the temporary restraining order will therefore be continued for the plaintiff to present, if it can, a prima facie case warranting a preliminary injunction under that portion of the complaint which relates to diversity jurisdiction, viz., the claimed lack of quorum due to the alleged revocation of proxies, and due to the alleged falsification of signatures.

### Supplemental Opinion

The court having retained jurisdiction on the grounds of diversity, the case proceeded for hearing on the matter of a preliminary injunction. The plaintiff during the course of this, with the court's permission and, perhaps, invitation, introduced the deposition of the witness Smith, of the so-called Smith group, and reargued the matter of the violation of S.E.C. Rule X–14A–9. This subject will, accordingly, be further considered.

If there was a falsity in the Smith solicitation material, it was of a somewhat unusual character: —it was not, at least in operative effect, a misrepresentation of a past or present fact, but a promissory representation that the proxies would not be voted for management directors. So far as his original intention was concerned, it might be an easy solution for the court to find as a fact that on April 6, when this material went out, Smith had, as he then indicated, every intention to vote against management, come what may, and hence made no actual misrepresentation or concealment, but an examination of his testimony and subsequent conduct does not make that too appealing a conclusion. At the least Smith displayed a facile opportunism that would seem considerably beyond what the shareholders who entrusted their proxies to him had cause to expect. Hence I prefer to consider first the legal aspects, namely, the ruling previously made that a misrepresentation of the character claimed here did not invalidate the proxies in every respect.

It seems to the court that in order to invalidate a proxy for fraud, particularly at the request of a third party after the meeting,[1] there must be an affirmative showing of the fraud's operative effect. In some cases, of which Wyatt v. Armstrong, 186 Misc. 216, 59 N.Y.S.2d 502, cited by the plaintiff is an example, the misrepresentation went to the very matter sought to be set aside. In others it is clear that the misrepresentations could not be isolated, and that the proxy was accordingly tainted throughout. It does not seem to the court that this must always be so. Suppose that a proxy is solicited for the purposes of voting for A as president, for B, C, D, and E as directors, and in favor of consolidating with the XY Company. A material misrepresentation was made about E. It would be carrying things a long way to permit an attack on the votes of those proxyholders electing A and approving the merger with the XY Company. This would seem a compulsory disenfranchisement of innocent stockholders, and a disrupting of the corporate process, far beyond what was needed to be remedied.

[1]. The court is not passing on a suit brought by the S.E.C. before the meeting to enjoin the use of proxies where its rules have been violated. Possibly, although not necessarily, different considerations would apply.

310

In the case at bar the Smith solicitation material expressly stated that the proxies would be "voted for quorum". The proxies further contained instructions about voting against liquidation. While the case is possibly not so clear as the one earlier supposed as an example, nevertheless the court feels that the same principle should apply, viz., that a misrepresentation limited in nature to one item in the proxy should not be held to invalidate the use of the proxy for all purposes. To go further would be to give too much weight to conjecture.

The plaintiff, by amendment, asserts a further violation of Rule X–14A–9 by Smith, namely, that at the time of solicitation he failed to disclose an already-formed intention to submit along with the proxies he should actually receive further purported proxies containing unauthorized or forged signatures. The plaintiff says that if persons who did send in proxies had known of this dishonest intent, they might not have done so. Hence, plaintiff says even the genuine proxies are to be held invalid.

While such a dishonest intention on Smith's part, if it existed, would have been highly reprehensible, in legal effect the court is being asked to enunciate the very broad doctrine that the concealment of any fact having no bearing on any of the specific matters to be voted on, but which merely would reflect sufficiently unfavorably on the person soliciting the proxy to make it likely that shareholders would hesitate to entrust him with their proxies, renders their votes, even though cast in exactly the way they intended, incapable of being counted.

The court believes that the principles already discussed are more than sufficient to answer this contention. Relief cannot be granted under this paragraph.

In view of the ruling that the Smith proxies are not disqualified en masse from being counted towards a quorum it becomes necessary to examine the objections to certain individual proxies.

Prior to March 23rd Smith solicited proxies and obtained an indeterminate number, which he brought to Boston for the purpose of attending the meeting that day. However, in spite of enthusiastic physical encouragement applied during a scuffle in the hall, Smith refused to enter the meeting and returned to New Jersey without registering these proxies. Because of this, or for some other reason, difficulties developed between him and the S.E.C. The March 23rd meeting was adjourned, for lack of a quorum, to April 20th. On April 6th, Smith sent out new proxy forms accompanied by a new solicitation letter. This letter contained the following:

"It is understood that your Proxy will be presented and voted for quorum purposes at the adjourned meeting to be held on April 20, 1954, or any adjournment thereof.

"Any and all Proxies received prior to the date of this statement will not be voted."

In spite of this language, at the adjourned meeting of April 20th Smith delivered to the tellers a large number of proxies which had been received by him on or prior to April 6. I find that the defendant had knowledge of this letter and of the fact that Smith submitted proxies received before its issue. An agent may himself terminate the relationship. On ordinary agency principles this letter must be given its specified effect of terminating Smith's authority to act under such earlier proxies, even for quorum purposes. The parties have stipulated the number that would be so affected.

The plaintiff next contends that a large number of proxies were counted which had been revoked. The defendant admits disregarding purported revocations, but says that they were ineffective. The circumstances were these:

As already stated, the meeting was adjourned on March 23rd to April 20th.

Prior to the hour of convening on April 20th plaintiff delivered to management purported revocations of a substantial number of proxies which had been filed proir to March 23rd by owners of record on March 1st, but whose stock had since been acquired by the plaintiff. It could not be told on April 20th whether a quorum was present, and the meeting was recessed from time to time until April 23rd. During this interval more proxies were received. Some of these were accompanied by revocations. Here again, proxies had been executed by owners of record on March 1st, who subsequently sold their stock to the plaintiff. In these instances, however, the proxies had not been turned in. The plaintiff turned in a large number of proxies, and their subsequent revocations, simultaneously, after the April 20th recess.

On April 23rd, the defendant announced the presence of a quorum, which the plaintiff immediately challenged. It is to contest that question that the present action is brought.

 It might be well at the outset to dispose of the defendant's alternative contention that even if a quorum was not present April 23rd, on April 20th one was present or, at least, that the plaintiff has not shown there was not. This involves, first, a question of fact. I resolve it in favor of the plaintiff. The defendant contends that certain proxy-holders were physically present on the 20th, with proxies in their possession, and that accordingly they should be counted for a quorum even though the proxies were not turned in until later. With this the court is inclined to agree. Duffy v. Loft, Inc., 17 Del.Ch. 140, 151 A. 223, affirmed 17 Del. Ch. 376, 152 A. 849. However, by the same token, the revocations were also physically present with the proxy-holders, and equally to be counted on the 20th, it they were to be counted at all. I am satisfied that the defendant was in no better position, quorum-wise, on the 20th, than the 23rd, and that these shares are to be counted net in either case.

The question of the existence of a quorum on the 23rd therefore depends essentially upon the solution of the following: On March 23rd the plaintiff's 6,800 shares of record on March 1st were represented at the meeting, although no proxies were turned in. On April 20th they were not represented. On March 23rd a number of other shares were represented by proxies filed with management, which prior to April 20th the plaintiff revoked. (In the case of certain Smith proxies, as distinguished from the other non-management proxy-committees, the proxies were filed before April 20th, and not revoked until later. Numerically these were not significant, and the court will not deal with them.)

The defendant says that once present at a meeting, stock is always present for quorum purposes at subsequent adjournments. It cites some lower court cases which hold that once a quorum has been established at a stockholders' meeting the meeting can continue irrespective of the number of subsequent withdrawals. Hexter v. Columbia Baking Co., 16 Del. Ch. 263, 145 A. 115; Commonwealth v. Vandegrift, 232 Pa. 53, 81 A. 153, 36 L. R.A.,N.S., 45. I have grave doubts as to the soundness of those decisions. Those courts themselves admit that under ordinary parliamentary law a quorum must remain present throughout. They proceed on the basis that stockholders' meetings are required, and that accordingly more lenient principles should apply. This seems a questionable doctrine, and one difficult of delineation. It would seem preferable to lower the quota requirement itself than to propose artificial means of circumventing it.

 In any event, this court will not extend those cases (perhaps not an extension of the Delaware decisions, cf. Atterbury v. Consolidated Coppermines Corp., 26 Del.Ch. 1, 20 A.2d 743), and hold that a shareholder present in per-

son or by proxy before a quorum exists cannot leave without being counted towards a quorum later. The defendant's argument misconceives the purpose of the quorum requirement, which is that a certain minimum number of persons shall convene and consider. It is not a meeting when less than that quantity convene on a number of separate days, on no one of which a quorum was present. Cf. U. S. v. Interstate R. Co., D.C. Va., 14 F.2d 328; Nicholson v. Kingery, 37 Wyo. 299, 261 P. 122; Fletcher, Corp., secs. 392, 393, 1996.

The defendant suggests that it was "capricious" (to quote the Vandegrift case) for the plaintiff, having been present March 23rd, and capable of being present April 20th, not to appear on the 20th, and hence that it was proper to treat it as remaining present. This is a dangerous suggestion. Is the presence of a quorum to depend upon a determination of the reason for some shareholder's disappearance? And if disappearance, why not non-appearance? There being no duty on a shareholder to attend a meeting in the first place, there can be none on him to remain. It seems no more logical to find a quorum because some stockholder left for a "capricious" reason than because he stayed away altogether for the same reason. The plaintiff had a right to buy stock when it chose, and it had the same right as any other stockholder not to attend, or remain, at a meeting. There can be no half-way position. I rule that the revocations were valid.

The defendant asserts that the plaintiff is guilty of unclean hands. Insofar as this contention is based on its buying stock, or revoking proxies, and not attending the meeting, this matter has already been covered. The case of Lutz v. Webster, 249 Pa. 226, 94 A. 834, cited by the defendant, is not to be regarded as accomplishing anything more than striking down a by-law as inconsistent with the statutory quorum requirement. It is not unclean hands to abstain from a meeting which other stockholders could hold, if enough of them chose to.

Unclean hands is a serious charge. It means unconscionable conduct. I am not satisfied that the equity suits in the state court in which the plaintiff directly or indirectly participated, whether regarded severally, or collectively, or in conjunction with other matters before the court, call for the application of this principle. Nor does the fact that one of these equity suits raises essentially identical issues between the parties and no temporary injunction was issued by the state court. The defense of prior action pending, in ordinary actions in personam, does not apply between the state and federal courts. Grubb v. Public Utilities Comm., 281 U.S. 470, 50 S.Ct. 374, 74 L.Ed. 972. It follows that what one court does with regard to granting or refusing preliminary relief can be no concern of the other.

Finally, the defendant contends that granting a preliminary injunction is extraordinary relief, and should not be done in the absence of compelling reasons, even though a prima facie case of a lack of quorum has been presently made out. For this there is much to be said. If the court were in considerable doubt as to the eventual outcome of the suit it would resolve those doubts against issuing any preliminary injunction regardless of the possible complications which might follow from allowing the directors now to be declared elected by the defendant, and subsequently to be held by the court to be not. However, after an already lengthy hearing of both sides, it appearing most probable that a permanent injunction will be issued in due course, the court believes it more appropriate that a preliminary injunction issue at this time.

The defendant's motions filed during trial are denied. An order will be entered for a preliminary injunction. Counsel to prepare findings.