**ITC CELLULAR, INC., Appellant,**

v.

**Walker C. MORRIS, Charles O. Ekwurzel, and East Texas National Bank, Appellees.**

No. 06–94–00152–CV.

Court of Appeals of Texas, Texarkana.

Sept. 19, 1995.

Jeffrey S. Levinger, Rodney H. Lawson, Carrington, Coleman, Sloman, Dallas, John R. Mercy, Atchley, Russell, Waldrop, Texarkana, for appellant.

Jon Sparling, Dallas, for appellees.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

ITC Cellular, Inc. (ITC), the plaintiff below, appeals the granting of summary judgment in favor of Walker C. Morris, Charles O. Ekwurzel, and East Texas National Bank, the defendants below. ITC contends that the trial court erred in granting summary judgment by determining that the January 13, 1994, meeting and the actions taken therein were valid, and that the trial court erred in granting more relief than was requested in the motion for summary judgment.

At the outset, we should state that this Court has addressed matters relating to this controversy in our ruling on an original mandamus proceeding brought before this Court. Although our opinion is unpublished, it becomes a part of the law of the case. We recognized in that opinion that a suit is now pending in the 95th District Court of Dallas County that will ultimately determine the ITC stock dispute. We also recognized the right of the trial court in Dallas to freeze the assets of this corporation or take any other steps necessary to preserve the assets of the corporation until a proper determination can be made as to the rightful stockholders.

Walker C. Morris was the original founder of ITC, a Texas corporation. A majority of the stock in the corporation, fifty-three percent, was held by the Morris Children's Trust, with Walker C. Morris as the trustee. These parties will collectively be referred to as the Morris faction. Fred and David Neal later purchased a separate eighteen percent of ITC. In the style of the case, they are identified as ITC. They shall be referred to as the Neal faction.

In 1990, the Neal faction brought a shareholder's derivative suit. Subject to the settlement of that suit, proxy rights to the Morris Children's Trust were given to the Neal faction. Voting their interest and the proxy to the Morris Children's Trust, the Neals became officers of the corporation.

After two years, the Morris faction attempted to revoke the proxy given to the Neals. Each faction called shareholders' meetings at approximately the same time. The Neal faction called the annual shareholders' meeting to be held January 8, 1994. The Morris faction called a special shareholders' meeting to be held January 13, 1994 for the purpose of electing directors.

At the annual shareholders' meeting on January 8, the Neal faction voted the Morris Children's Trust shares. The bylaws were amended reducing the number of directors from two to one. Fred Neal was elected as sole director of ITC. Fred Neal was also re-elected as ITC president, and David Neal was re-elected as ITC's corporate secretary.

At the special shareholders' meeting on January 13th, the controversy centered around the fact that Jon Sparling, a Dallas attorney, presided over the meeting. The following is a portion of the transcript of what occurred at the beginning of that meeting:

MR. SPARLING: As I—I guess the first thing that I need to do is call the meeting to order. The meeting is called for today, January 13th, 1994, at 6:30 p.m. And it is now 6:35 p.m.

MR. CHAPMAN [Charles Chapman, ITC's corporate counsel]: Well, I think that probably you don't have the authority to call the meeting to order.

MR. SPARLING: I will turn it over to the president if and when it becomes appropriate. The—

MR. CHAPMAN: I'm going to object at that point.

MR. SPARLING: Go ahead.

MR. CHAPMAN: Section 2.12 says the presiding official at the meetings must be the person, if he has been elected by a vote of a majority of the shares then entitled to vote at the meeting, or the president shall preside at and the secretary shall prepare minutes of each meeting of shareholders.

So you have no authority to preside at the meeting or to even open the meeting. So if you are ready to open the meeting, we'll have to turn the meeting over to the president to—

MR. SPARLING: Well—

MR. CHAPMAN: —open the meeting.

[Sparling requested Colbert to examine the proxy so a determination could be made whether there was a quorum present. After Sparling determined that a quorum was present, he continued.]

MR. SPARLING: At this time under Article 2.12 of the by-laws (sic) says that unless voted otherwise by a majority of the shares present, the meeting shall be presided—shall be presided by the president of the corporation.

I now call for a vote to determine who shall preside at the meeting.

Do I hear a second?

MR. EKWURZEL: Second.

MR. CHAPMAN: The meeting can't call for a vote until the meeting has been convened. The meeting has not been properly convened.

MR. SPARLING: At this time I move that Jon Sparling, myself, shall preside at the meeting. Do you—

MR. EKWURZEL: Second.

MR. CHAPMAN: At this point we will excuse ourselves.

MR. SPARLING: Sure. Fine.

MR. CHAPMAN: The meeting has not been properly convened. You are not using a proper list of shareholders.

MR. CHAPMAN: And so at this point we don't care to—

MR. SPARLING: As I understand it, the transfer books of the corporation have not been provided; is that correct?

At that point, David Neal, Fred Neal, Jr., and Charles Chapman left the meeting. Sparling was then elected to act as chair to conduct the meeting. At the meeting David and Fred Neal were ousted as directors and Walker C. Morris and Charles O. Ekwurzel were elected as directors.

ITC sought declaratory relief to prohibit Morris and Ekwurzel from holding themselves out as directors of ITC. The East Texas National Bank interpleaded $86,657.43, which represented money of ITC on deposit. The money was deposited with the clerk of the court pending a decision regarding which of the competing directors would receive the money on behalf of the corporation. The Morris faction moved for summary judgment alleging they were legally elected at a properly conducted meeting at which a quorum of shareholders was present. The trial court granted the Morris faction's motion for summary judgment concluding a quorum was present and that the fact that the president was not allowed to initially open the meeting did not render the meeting void. The Neal faction now appeals the granting of that summary judgment.

The basis of a motion for summary judgment is that no genuine issue exists for any material fact and that the movant is entitled to summary judgment as a matter of law. TEX.R.CIV.P. 166a(c). The defendant can properly obtain a summary judgment by conceding that there are no disputed material facts and argue instead that the plaintiff's legal position is incorrect. *American Medical Electronics v. Korn*, 819 S.W.2d 573, 576 (Tex.App.—Dallas 1991, writ denied).

By its first point of error, the Neal faction attacks the summary judgment, contending that the January 13 meeting and the actions taken therein were invalid. The Neal faction first argues that the January 13 meeting was improperly convened and organized because the president was not allowed to initially preside. Article 2.12 of the bylaws of ITC provides:

Unless some other person or persons are elected by a vote of the majority of the shares then entitled to vote at a meeting of shareholders, the President shall preside at and the Secretary shall prepare minutes of each meeting of shareholders.

During the January 13 meeting, Jon Sparling, holder of the Morris Children's Trust, convened the meeting rather than Fred Neal, Jr., ITC's presiding president.

In the case of *Duffy v. Loft*, 17 Del.Ch. 376, 152 A. 849 (1930), two factions were competing for control of an annual shareholders' meeting and the incumbent president was not allowed to preside at the meeting. Rather, another chairperson was elected to run the meeting. The bylaws provided that "the President shall preside at all meetings of the stockholders, unless the stockholders shall appoint a Chairman, who may be the President." Another bylaw provided that

the order of business would be: 1) call to order, and 2) election of a chairman, etc. The court, therefore, found the meeting valid, though the president did not preside because he refused to allow the election of a chairman and the stockholders "could resort to no other course than they did."

■ A careful examination of the transcript of the beginning of the meeting shows that Fred Neal, the president, did not seek to preside over the meeting. Had he done so, he would have been entitled to preside over the meeting until some other person was elected. The president, however, cannot thwart the will of the majority by refusing to allow an election of a new chairperson as provided for in the bylaws of the corporation. Because the president defaulted by failing to take charge of the meeting, it was not fatal for someone else to temporarily conduct the meeting until a presiding officer could be elected. ITC contends Fred Neal did not default by failing to take charge, but was prevented by Sparling's actions from taking charge. The summary judgment proof does not suggest that Fred Neal attempted to begin the meeting. Rather, the proof shows Fred Neal, through his attorney, simply objected to Sparling's commencement of the meeting. We find a distinction in these fact patterns. The facts in this case are similar to those in *Duffy v. Loft* where the president simply attempted to hinder the progress of a meeting. 152 A. at 853. There, the court found that the president defaulted by failing to take charge of the meeting. Thus, as the court found in *Duffy*, we find Fred Neal defaulted his right to commence the meeting by failing to take charge. This point of error is overruled.

■ The Neal faction next argues that no quorum had attached when Morris and Ekwurzel were purportedly elected as ITC directors. With respect to any matter, a quorum shall be present at a meeting of shareholders if the holders of a majority of the shares entitled to vote on that matter are represented at the meeting in person or by proxy. Tex.Bus.Corp.Act Ann. art. 2.28 (Vernon Supp.1995). A quorum attaches when the meeting commences. There is no

dispute that all of the people initially attending the meeting constituted a quorum.

■ The Neal faction further argues that the quorum was broken when the Neal faction left the meeting. Article 2.28(A) of the Texas Business Corporation Act provides:

Unless otherwise provided in the articles of corporation or bylaws, once a quorum is present at a meeting of shareholders, the shareholders represented in person or by proxy at the meeting may conduct such business as may be properly brought before the meeting until it is adjourned, and the subsequent withdrawal from the meeting of any shareholder or the refusal of any shareholder represented in person or by proxy to vote shall not affect the presence of a quorum at the meeting.

The bylaws of ITC also state in Article 2.08 that the withdrawal of holders of sufficient voting shares leaving less than a quorum shall not prevent the remaining shareholders from continuing to transact business.

Article 2.28(A) of the Texas Business Corporation Act specifically provides that a quorum is not affected by the withdrawal of shareholders. Tex.Bus.Corp.Act art. 2.28(A) (Vernon Supp.1995). In absence of any other controlling law, we find the quorum was not broken by the Neal faction's subsequent withdrawal.

The Neal faction contends an exception to this general rule is when a shareholder has good cause to leave, then the quorum is broken. In the cases cited by the Neal faction, the court impliedly created this exception by stating that the shareholders had no good cause to leave the meetings. *Duffy v. Loft*, 152 A. at 853; *Hexter v. Columbia Baking Co.*, 16 Del.Ch. 263, 145 A. 115, 116 (1929); *Commonwealth v. Vandegrift*, 232 Pa. 53, 81 A. 153, 156 (1911). In none of the cases cited did the court actually find that good cause existed to leave the meeting, nor did they define such good cause.

■ ITC urges the argument that good cause existed for the Neals to leave the special shareholders' meeting, which broke the quorum. When a shareholder is forced to leave or denied the right to participate in a shareholders' meeting, the shareholder's lack

of participation is not the result of a voluntary withdrawal. When so excluded, the quorum can be broken. *See Duffy v. Loft,* 152 A. at 853; *Hexter v. Columbia Baking Co.,* 145 A. at 116; *Commonwealth v. Vandegrift,* 81 A. at 156.

In the case at bar, however, the summary judgment proof reflects that the Neals voluntarily left the meeting. We recognize that the Neals were not satisfied with the amount of stock they were allowed to vote, but the ownership of the stock is pending in another court. Any relief involving a calculation of the ownership of the stock must be resolved by that court.

 The Neal faction further contends that the January 13 meeting was invalid ab initio because it was conducted in bad faith. This issue was not presented to the trial court and cannot be considered on appeal as grounds for reversal. TEX.R.CIV.P. 166a(c). This point of error is overruled.

In their second point of error, the Neal faction contends that the trial court erred in granting the Morris faction more relief than they requested in their motion for summary judgment. The Morris faction requested a declaration that they were the officers and directors of ITC. In its final judgment, the district court declared

> that the actions taken at the special shareholders' meeting of January 13, 1994, were valid, and, therefore, Walker C. Morris and Charles O. Ekwurzel were elected the valid and legally authorized directors of ITC as of January 13, 1994, and shall continue as such until their successors are elected or appointed.

The Neal faction points out that the court went on to order the clerk to release to the Morris faction $41,466.31 deposited into the court's registry.

The judgment also released the bank that deposited the funds, East Texas National Bank, from any further liability for the funds. The Neal faction contends the Morris faction did not request such relief from the court. The Neal group points to *Mafrige v. Ross,* in which the court finds that if a judgment grants more relief than requested, it

should be reversed and remanded. 866 S.W.2d 590, 592 (Tex.1993).

In the present case, the funds were deposited into the registry of the court by the interpleader until the court could make the determination as to the proper party or parties to receive the funds. Once that determination was made, the order to the clerk to distribute those funds according to the determination was no more than a housekeeping measure which the court can initiate of its own volition. This point of error is overruled.

The judgment of the trial court is affirmed.