In the Matter of KENNETH S. WYATT et al., on Their Own Behalf and on Behalf of All Bondholders and Stockholders of Third Avenue Transit Corporation, Petitioners, against MALCOLM A. ARMSTRONG et al., Respondents.

Supreme Court, Special Term, New York County, December 3, 1945.

*Herman I. Lurie, Louis Kipnis* and *Joseph Nemerov* for petitioners.

*Harry J. Halperin,* intervener in person.

*Joseph Nemerov* for Irving Wasserberg, intervener.

*Nathaniel L. Goldstein, Attorney-General (John P. Powers* and *A. B. Wagman* of counsel), for People of the State of New York, intervener.

*A. W. Jennings* for Malcolm A. Armstrong, respondent.

*Thomas J. Minturn* for Victor A. McQuistion and others, respondents.

*Lawrence B. Morris* for Wells B. Priest and others, respondents.

*James F. Donnelly* and *Alvin R. Cowan* for Louis H. O. Fischman and others, respondents.

*Harry J. Cloutman* for Henry B. Peelle, respondent.

*Frank Weinstein* for Irving Isaacs, respondent.

*George C. Levin* for John A. Kaye, respondent.

*James B. Hayes, Jerome H. Doran, Samuel H. Kaufman* and *Milton S. Gould* for Third Avenue Transit Corporation, respondent.

*Milton V. Freeman, W. Victor Rodin* and *Roger S. Foster* for Securities and Exchange Commission, *amicus curiæ.*

HOFSTADTER, J. This is an application pursuant to section 25 of the General Corporation Law for an order vacating and declaring void the election of directors of the Third Avenue Transit Corporation held on the 9th of May, 1945, and directing a new election to take place forthwith, and for other relief.

Stripped of its plethora of irrelevant and redundant allegations, the petition alleges that the election held on May 9, 1945, should be set aside because the proxies voted thereat were secured by withholding vital information from the electors, information which might have affected their vote had it been

furnished them. In brief, it appears and is not seriously challenged in any of the replying papers, that Mr. Fred Cox signed and delivered to Mr. Malcolm A. Armstrong an undated resignation on or prior to the 9th day of May, 1945, and that the purpose of this resignation was to enable Armstrong and John A. Kaye between them to control the board of directors. The petition also alleges that other nominees, on whose behalf proxies were solicited, aside from Mr. Cox, likewise furnished resignations in advance; but it does not appear that any others actually signed undated resignations at or prior to the election held on May 9th. In addition, numerous allegations of fraud and conspiracy against the respondents are generally charged in the petition and in the affidavits of the Attorney-General of the State of New York requesting leave to intervene in support of the petition. A number of the respondents, who are directors of the corporation as a result of the election on May 9, 1945, have likewise joined in the request that the election be set aside and that a new election be ordered.

The general picture that emerges from the numerous papers filed, both in support and in opposition to the pending application, is one of confusion and backstage machinations for the purpose of securing control of an important public utility. Enough is alleged and either explicitly conceded or not denied to show that when the election on May 9, 1945, was held, the electors who had given their proxies to the various committees soliciting them, had been kept in ignorance of the true state of affairs and were, indeed, unaware of the fact that their proxies were being used, at least in the case of the so-called "Investors Group", for the purpose of handing over the control of the corporation to others than those named as the nominees for the directorships involved.

Such conduct on the part of those who are in the highest fiduciary relationship with stockholders and bondholders of a corporation is reprehensible in the extreme and should not be tolerated in a court of equity. Section 25 of the General Corporation Law* is specifically designed for the purpose of enabling a court of equity to correct a situation of this kind

---

* Section 25 of the General Corporation Law provides as follows: *"Powers of supreme court respecting elections.* Upon the application of any member aggrieved by an election, and upon notice to the persons declared elected thereat, the corporation and such other persons as the court may direct, the supreme court at a special term thereof shall forthwith hear the proofs and allegations of the parties, and confirm the election or order a new election, as justice may require."

when brought to its attention. I have had occasion, in another case, to state the general principles of law applicable to cases of this kind.* In brief, it may be said that under section 25 of the General Corporation Law, the court is not confined to strict legal considerations, but has broad equitable powers which should be exercised whenever the election sought to be reviewed is so clouded with doubt or tainted with questionable circumstances that the standards of fair dealing require the court to order a new, clear and adequate expression of the security holders' will. No other conclusion could be drawn from the mandate of the court contained in *Matter of Kaminsky* (251 App. Div. 132, 140, affd. 277 N. Y. 524), where the court said: " If the result is not free from suspicion, or is clouded with doubt, and justice demands, we may in all fairness require the parties to start over again. When right, justice and fair play require, a new election should be ordered." (See, also, *Matter of Bogart,* 215 App. Div. 45; *Matter of Joseph Fritsch,* 257 App. Div. 908; *In Re Flushing Hospital & Dispensary,* 27 N. Y. S. 2d 207, affd. 262 App. Div. 749, mod. on other grounds and affd. 288 N. Y. 125. And, to the same effect, see, also, *Matter of Prophet,* 236 App. Div. 524; *Di Silvestro* v. *Sons of Italy Grand Lodge,* 130 Misc. 494, 498.)

The views expressed by the courts of New York, as indicated above, are concurred in by numerous decisions from other jurisdictions. (See *Pierce Oil Corp.* v. *Voran,* 136 Va. 416; *Stratford* v. *Mallory,* 70 N. J. L. 294; *In re Zenitherm Co.,* 95 N. J. L. 297, 299; *Lawrence* v. *I. N. Parlier Estate Co.,* 15 Cal. 2d 220.)

The rule is clearly applicable to this case. The security holders entitled to vote were misled by being deprived of information which might easily have affected their judgment. The result is, therefore, not only clouded in doubt but highly suspicious. Those who hold positions of trust and confidence are under a duty so to conduct themselves as to avoid the inference that they are seeking, for self-interest, to mislead the real owners of their corporations. Upon their failure to abide by those principles of fair dealing, the court is under a duty to deal with them as justice may require.

· Numerous objections to the granting of the petition have been urged before me, both on oral argument and in briefs submitted by various respondents.

---

* See *Matter of Scheuer* (*London Terrace, Inc.*) (N. Y. L. J., Oct. 2, 1942, p. 848, col. 2) confirming the report of Referee Bachner. The cases are collected in the report and the principles of law involved stated extensively.

It has been argued, first, that the application is barred by a four-month Statute of Limitations. This is based upon a statement contained in a decision of the Appellate Division in *Matter of Workmen's Benefit Fund (Michel)* (265 App. Div. 176), where the court said of a proceeding brought under section 25 of the General Corporation Law that it was instituted pursuant to the provisions of article 78 of the Civil Practice Act. Section 1286 of that article provides that a proceeding brought thereunder must be instituted "within four months after the determination to be reviewed becomes final and binding." It is to be noted, however, that the period of limitation was not involved in that case, and that the case dealt merely with the procedure to be adopted in the administration of applications under section 25 of the General Corporation Law. Nothing was said in that case, nor is there any language in section 1286 of the Civil Practice Act, or in section 25 of the General Corporation Law, which would indicate an intention on the part of the Legislature to place any limitations of time on applications under section 25. To be sure, were there any circumstances in the case at bar indicating a failure to act promptly upon the discovery of the fraud, a situation quite independent of statute might be presented justifying denial of the petition. But no such circumstances are here presented. Moreover, the petitioners bring this proceeding on their own behalf as well as on behalf of all other stockholders and bondholders similarly situated. As to the vast body of security holders, it is clear that they had no means of discovering the concealments complained of in the petition, and their failure to act more promptly could not be held as a limiting circumstance unless the respondents had been injured thereby. Since no such injury is either alleged or proven, there is no basis for the contention that the petitioners are precluded from maintaining this proceeding either on statutory grounds or on general principles of equity. (*Marcus* v. *Village of Mamaroneck*, 283 N. Y. 325, 332.)

Secondly, it is alleged that, even if the election of May 9, 1945, was improper and should be set aside, nevertheless the incumbent directors must be allowed to continue in office and no new election should be held because they were likewise elected at a meeting of the old board held on May 29, 1945. On that date, it appears in the record the members of the old board, who had been defeated at the May 9th election but who nevertheless maintained that they had a right to continue in office, met and resigned one by one, and as each member resigned, a

substitute was elected from the slate that had secured a plurality at the May 9th election.

The circumstances which led to this unusual procedure arose out of the fact that the stockholders of the corporation changed the date of the annual election from November to May 9th. It is argued that this change of date could not have the effect of cutting short the term of office of the directors who had been elected in November, 1944. The argument is based upon decisions of courts in some States in which it has been held that a mere change in the date of the annual meeting for the election of directors cannot affect the term of office of the directors then in office. The principal case relied upon in support of this proposition is *Toledo Traction, Light & Power Co.* v. *Smith* (205 F. 643), construing the Ohio corporation law. It is to be noted, however, that in that case the court points out that " All the Ohio statutes speak of *annual* elections at which directors shall be chosen " (p. 646). (Italics supplied.) The New York statutes, however, do not require annual elections, the only reference to annual elections in our corporation law being contained in section 55 of the Stock Corporation Law, which provides that " At least one-fourth in number of the directors of every stock corporation shall be elected annually." That section, however, is intended to provide a method for staggering the election of directors and the word " annual " there used does not preclude elections for a shorter term. Indeed, section 25 of the General Corporation Law itself, which authorizes the court to order a special election, would not be effective if the directors elected at such election were required to hold office for a full year. On the contrary, it is perfectly clear that the directors to be elected at the special election to be ordered by the court will, in this case, hold office only until May 9, 1946, when the regular annual meeting of stockholders takes place.

But even if it be admitted that the election of May 9th was ineffective to curtail the term of the board then in office, it would merely follow that that election was a nullity. The board that was then in office has since resigned and we are then faced with the question of whether the action taken by that board on May 29, 1945, may be allowed to stand. I am of opinion that to do so would be contrary to the requirements of justice in the instant case. The resignations and elections which took place on May 29, 1945, were a result of pressure brought by the present incumbents upon the old board. Indeed, the proceedings taken on that date may well be considered as part and parcel of the whole

effort which resulted in the illegal election on May 9th. The present incumbents came into office by securing votes from security holders on the basis of concealment amounting to misrepresentation. Having secured the so-called plurality of security holders' votes, then they proceeded to bring pressure upon the old board to regularize their election by the corporate maneuvering which took place on May 29th. I am of opinion that what took place on that date must be regarded as part of the same transaction which occurred on May 9th and tainted with the same evils that section 25 of the General Corporation Law is designed to remedy.

Third, it is argued that the petitioners have no standing in this proceeding because they are bondholders rather than stockholders. But they are bondholders who are entitled to vote for the election of directors and as such they are members of the corporation who are " aggrieved " within the meaning of section 25 of the General Corporation Law. Moreover, upon the oral argument, an application was made for leave of stockholders to intervene in this proceeding. Such application is hereby granted and the proceeding continued on behalf of stockholders as well as bondholders. In addition, the petition is joined in by directors of the corporation whose right to question the regularity of these proceedings under section 25 of the General Corporation Law cannot be doubted.

The public interest in the proper conduct of corporate elections is a matter of great concern in the commercial community in which we live. It is of utmost importance that the many millions of security holders throughout the land should have reason to rely upon the integrity of those who manage the affairs of our corporations; that they be permitted the same freedom in the expression of their wishes with respect to the election of directors that is accorded to citizens in political elections. The affidavit filed by the learned Attorney-General of the State of New York contains important material, though not specifically relevant to the precise issues before me, and was no doubt presented to the court for the purpose of demonstrating that the atmosphere surrounding the proceedings taken by this corporation on May 9 and May 29, 1945, was completely devoid of that candid and honest dealing which alone justifies the refusal of the court to interfere with the internal affairs of a corporation. Our courts have wisely adopted a policy of judicial self-limitation, refraining, wherever possible, from interfering by judicial fiat with management of matters entrusted to directors, officers and

stockholders of corporate enterprises. But the court would fail in its plain duty if it did not interpose its equitable process to prevent the continued perpetuation of fraud or to right wrongs which have resulted in depriving security holders of their complete freedom to vote at corporate elections in the light of a complete disclosure of all the relevant facts and circumstances.

The matters before me are, therefore, disposed of as follows: (1) The application to set aside the elections of directors of the Third Avenue Transit Corporation held on May 9 and May 29, 1945, is granted; (2) a new election is directed to be held on a date to be fixed in the order to be entered herein, within thirty days from the date of said order; (3) notice of said meeting is to be given to all security holders entitled to vote thereat, in accordance with the provisions of the by-laws of the corporation; (4) the motion to dismiss the petition is hereby denied; (5) the motion to expunge from the record portions of the affidavit of the Attorney-General, sworn to the 26th day of November, 1945, is likewise denied, and (6) the court will entertain an application, but only on consent of all the parties hereto, for the appointment of a referee to supervise the forthcoming special election, and to pass upon all letters and communications to be sent to security holders for the solicitation of proxies.

Settle order on notice.