Bertram Harnett, J.
Considerations of union democracy combine with the Taylor Law and employees of Nassau County to raise a novel, but important, issue germane to the resolution of public labor disputes. Where a union is the bargaining agent for a PERB (Public Employment Relations Board) unit, and there are unit members who are not also union members, have the nonunion members a legal right to vote on a contract ratification proposal submitted only to the union members?
The Nassau chapter of the Civil Service Employees Association (CSEA) has been designated as the employee organization which is the exclusive bargaining agent for the PERB unit which consists of about 13,500 Nassau County employees. Of these, 10,800 are also CSEA members.
On January 5, 1973, CSEA reached a proposed agreement with Nassau County after contract negotiations. The proposal, embodied in an outline prepared by the attorneys for both sides, was later discussed at a regular union meeting with about 400 *724 attendees. The restriction, understood by both the union and the county officials, was that the proposal was subject to formal ratification by vote of the CSEA membership and by the County Board of Supervisors.
The petitioner here, a county employee and bargaining unit member, but not a CSEA member, protests .that he .should have a right to vote on the ratification. The ratification vote is scheduled for February 28,1973, but .all preliminaries were suspended by the court pending the completion of a hearing.
Analytically, there are two beginning propositions. The first is whether a ratification vote is legally required, and the second, if there is such a ratification vote, who can vote.
Let us start with the first proposition, is ratification legally required. This can come from law or agreement. However, nothing in the Taylpr Law, which is section 20D et seq. of the Civil Service Law, other statutes or case law requires that a proposed public employees.’ labor agreement be submitted for ratification. (Public Employees’ Division, Int. Brotherhood of Teamsters, Local 854 v. Town of Oyster Bay, N. Y. L. J., Oct. 14, 1968, p. 18, col. 5.) Section 204 of the Civil Service Law simply authorizes recognized employee organizations (CSEA here) ■to enter into 'agreements determining terms and conditions of employment.
Significantly, section 204-a of the Civil Service Law, in subdivision 2, provides: “ Every employee organisation submitting such a written agreement to its members for ratification shall publish .such notice, include such notice in the documents accompanying such submission ,and shall read it aloud at any membership meeting called to consider .such ratification ”. (Emphasis supplied.) This is a square statutory acknowledgement that a PEBB “ employee organization ” may submit an agreement to “ its ” members for ratification, and, in fact, refers to reading a notice at an employee organization membership meeting called to consider ratification.
It is plain from the testimony that no one undertook or agreed to get ratification from the non-CSEA members. On the contrary, the clear understanding of both parties to the negotiations was that only CSEA members would vote. While the law does not require 'any ratification at all, much less ratification by nonmembers of recognized employee organizations, the parties can agree otherwise by contract. The simple fact here, however, is that they have not done so. In fact, paragraph 1 of the preamble to the last expired contract between the county and CSEA defines “ negotiating unit ” to mean all employees in the bar *725 gaining unit, and also separately defines CSEA. In full and open knowledge of this dichotomy, no provision is made in the agreement for separate .action or ratification of non-CSEA members.
But, now that ratification is actually being had, do non-CSEA members have by law a mandatory voting right? In a published opinion (Official Decisions, Opinions and Related Matters of the Public Employment Relations Board of the State of New York, par. 2-5006), PERB counsel has opined that a recognized employee organization under the Taylor Law may “ limit to its own members a formal voice in the ratification”. This would appear to be correct, for does not the greater power to dispense with ratification altogether carry implicitly the power to call for a limited ratification?
The non-CSEA member then raises a question of union democracy and fairness, since.he becomes bound without a vote. This is doubtless an appealing argument for in our American tradition, there is repugnancy to closed votes and undemocratic procedures. However, the element of representational exclusivity is built into the Taylor Law. To the extent an employee can be bound by an organization to which he does not belong or even approve, that is part of the statute. He enjoys the benefits reaped, and carries the burdens imposed, by a negotiated agreement. Moreover, the employer here could have insisted on a ratification by 'all its covered employees, although union reluctance with this would be understandable on pragmatic grounds.
There are also justifiable moral elements in the union position. It performs a service for all unit members, yet its financial support comes only from its own members. This is a curious inversion of the old refrain, “ no taxation without representation ”. This is representation without taxation.
The nonunion unit members are not without remedy either. Under section 202 of the Civil Service Law, public employees have the right to both join or refrain from joining any employee organization. They may join the union and work within it, or, they may remain outside the union, and individually or collectively with others of common persuasion, challenge the representation status of CSEA as provided by subdivision 2 of section 208 of the Civil Service Law.
CSEA, as the recognized employee organization before PERB, must fairly represent all the unit employees, regardless of union membership. No indication appears in the record of unfair representation. (See Civil Service Law, § 207, subd. 3, cl. .[a] ; *726 § 208, sube!. 1, par. [a].) Failure to ¡ask ratification by the nonunion unit members does not appear ¡to this court to be unfair representation.
It has been testified that OSEA intends to use the Honest Ballot Association .to supervise the election, and that only dues-paying OSEA members currently employed and part of the bargaining unit will have the right to vote.
Section 204-a of the Civil Service Law provides that written public labor 'agreements must have a prescribed clause indicating conditions of legislative approval. The section also requires notice of this provision to be read aloud at a public meeting called to consider such ratification. At a general membership meeting, the agreement was discussed, and the prescribed clause was not read. The court does not consider this omission fatal where the meeting merely discussed the terms of the agreement, which has not yet been reduced to writing, and did not entertain a vote upon it. Here, the vote is by voting machine ballot in the near future. It will suffice if the notice specified in the statute is in fact delivered to the voting group in sufficient clarity and time to comprehend its contents.
Accordingly, the court will permit the election to proceed on the basis indicated, limiting the voting franchise to the applicable OSEA members. However, this ruling is not to be construed as any judicial approval of the legality of all or any terms of the proposed agreement. The petition is denied and the motion to dismiss is granted.