Emmett J. .Schhepp, J.
This proceeding was instituted to annul the June 29,1974 election of the officers of eight, a not-for-profit corporation, and to order a new election. A cross motion has been made for an order confirming the election. The order to show cause initiating the proceeding was granted on August 7, 1974 and relief was sought pursuant to the provisions of *656 section 25 of the General Corporation Law, which was repealed, effective September 1, 1974. The application is considered by the court under the powers enumerated in section 618 of the Not-For-Profit Corporation Law.
The allegations challenge -the election on various grounds, including lack of notice, illegality of a 1972 amendment to the corporation’s constitution, lack of qualification of Raymond Scott, who was elected president at the meeting, and other irregularities in the conduct of the meeting, such as failure to properly certify delegates, exclusion of delegates from the meeting, all of which are claimed to be in violation of the fight constitution and the applicable law.
Fight was organized in 1964 for the purpose of unifying the black people in Rochester and consolidating the strength of the black community for the betterment of the city. The -slate of officers presented by the nominating committee was elected, and the petitioner, Holsey Hickman, and Willie Lightfoot, opposing candidates of Coalition for Change for president and vice-president, were ruled ineligible under an amendment to the fight constitution and by-laws adopted at its biannual convention held in June, 1972. This provides that candidates for president must have completed at least three years with the corporation, two of which must have been on the steering committee, and that candidates for vice-president shall have served on the steering committee for not less than one year. Neither 'Coalition for Change candidate met these qualifications. It is this amendment which it is claimed was illegally adopted. The minutes of the 1974 convention reflected that three votes of the delegates were taken, including a vote on permanent chairman and the agenda. The opposition Coalition for Change delegates were unsuccessful in each vote. At the conclusion of the third vote on a procedural matter, petitioner Hickman stated the Coalition for Change ‘ ‘ recognized the entire process as being illegal ’ ’ and he and his supporters left the assembly before the election. It is conceded that a hearing to take factual testimony is unnecessary and that a determination may be made Jby the court upon the papers before it.
Notice of the place, date and hour of the meeting was not given as prescribed by section 605 of the Not-For-Profit Corporation Law. Extensive publicity was given to the meeting prior to June 29, 1974. There are substantial discrepancies, however, between the news releases, as to the beginning time of the convention, the time during which the polls for voting would be opened, and the actual proceedings at the meeting.
*657 Section 606 of the Not-For-Profit Corporation Law provides in part that “ The attendance of any member at a meeting, in person or by proxy, without protesting prior to the conclusion of the meeting the lack of notice of such meeting, shall constitute a waiver of notice by him.” The fight membership, according to its constitution, is comprised of member groups and general membership. “ Member Groups ” include groups and organizations, who may petition in writing for membership. General membership includes any person serving on any standing committee. None of the petitioners, with the exception of 'Canon St. Julian Simpkins, are members of fight, although some are delegates of member groups. Apparently the petitioner and all affiants who joined in the petition were supporters of the Coalition for Change slate. At least petitioner and Canon Simpkins were in attendance at the meeting. There is no claim that any protest of lack of notice of such meeting was made by anyone prior to its conclusion. It is held that the petitioners here, who were entitled to notice of the meeting, waived lack of notice, and there is no showing that the remaining petitioners as individuals were entitled to receive notice. The court cannot speculate on the identity either of members, who did not attend the meeting and consequently did not waive lack of notice or the members who attended the meeting individually or through its delegates and waived notice by failing to properly lodge a protest.
The constitution provides that proposed amendments shall be submitted to the constitution committee at least five weeks prior to the annual convention in order to be presented at the convention, and its recommendations for all changes shall be published and distributed one week prior to the annual convention. Section 602 of the Not-For-Profit Corporation Law provides the by-laws may be adopted, amended, etc., by the members at the time entitled to vote in the election of the directors, and the by-laws may contain any provision relating to the business of the corporation, the conduct of its affairs etc. The corporation had the right to place the restrictive 1972 amendment in its constitution. The fight constitution contains the provision that the annual convention shall have the power to accept and amend the constitution.
Four days before the June 17, 1972 convention, amendments to the constitution concerning the eligibility of candidates for the office of president and vice-president were discussed and the amendment in question delivered to Scott on June 15, or 16, 1972. The recommendation was not published and distributed *658 prior to that convention and there was a noncompliance with article VII of the fight constitution. The June 17, 1972 convention opened at 10:00 a.m. and was adjourned to about 8:00 p.m., at which time the constitution committee report, including this amendment, was accepted and passed unanimously.
The petitions for the 'Coalition slate were filed as required by the fight constitution, and on May 24,1974 both candidates were advised by letter from the chairman of the committee on credentials and arrangements that they were ineligible to run for office because of the foregoing constitutional provision. In the 1974 convention the Coalition candidates were nominated from the floor. The chairman advised that he could not answer the question as to whether all nominations received were being placed on the voting machine, which was present and contained the names of the candidates nominated by the nominating committee, including Scott and the names of the Coalition candidates, except the candidates for president and vice-president. The further question as to whether the coalition slate would appear on the voting machine was ruled, out of order and in answer to the further question as to whether the slate would be placed on the voting machine the chair advised that the nominations ‘ ‘ had been closed, accepted and motion carried.” A statement by one of the delegates that the 1972 constitution was not valid was ruled out of order and his statement that the constitution submitted to the chair was not the official constitution was ordered stricken from the record. Objection was made by some of the delegates to the chair’s using the 1972 constitution as it was not a legal constitution and the chair stated “he would not rule on the legality of the Constitution (1972) but he was going to use it.” After discussion relating to persons being permitted to enter the convention and their certification, the selection of tellers, and the agenda, the petitioner stated that the entire process was illegal and the Coalition supporters left the assembly. Thereafter the candidates nominated by the nominating committee were elected unanimously by a voice vote. Under the fight constitution concerning “ Election Procedures ”, candidates for office not nominated by the nominating committee can only be nominated by means of a nominating petition presented to the credentials committee. There is no provision for nominations from the floor. Technically, the Coalition candidates for president and vice-president having been declared ineligible by the credential committee, there was no constitutional means by which their names could be placed in nomina *659 tion, and the only candidates for these offices were the candidates elected at the convention.
In passing upon an election the court sits as a court of equity, and .should not interfere in the internal affairs of a corporation of this character unless a clear showing is made to warrant such action. (Matter of Hoe & Co., 14 Misc 2d 500, affd. 285 App. Div. 927, affd. 309 N. Y. 719.) The court has broad equitable powers and may direct a new election where the election under review is “ so clouded with doubt or tainted with questionable circumstances that the standards of fair dealing require the court to order a new, clear and adequate expression ’ (Matter of Wyatt v. Armstrong, 186 Misc, 216, ,220.) Had this amendment been passed at the 1974 convention to apply to the eligibility of persons seeking office at that time, there is no question but that justice would require an entirely new election. However, no question was raised concerning the failure to comply with the amendatory provisions of the fight constitution, until petitioner and his running mate were notified on May 24, 1974 of their ineligibility by reason of the amendment. Although notice was then given in behalf of the candidates, who were declared ineligible, that the restrictive amendment was not properly passed and was illegal, no further steps were taken to obtain a ruling on its validity. The 1974 convention itself was not a proper body to make such determination. There had been no recourse to the courts in the intervening period of over two years until this application was made. The ineligible candidates and their supporters had knowledge of their claimed ineligibility at least one month before the 1974 convention, and it may be inferred from the record that they had knowledge of the passage of the questioned amendment prior thereto. In any event, by the use of reasonable diligence they might have acquainted themselves with the factual situation in ample time to challenge the amendment and seek appropriate relief, and it would be inequitable to permit them to assert the claim now and aid the petitioners after such lapse of time and set aside the election. Under the fight constitution an amendment could have .beep proposed deleting the eligibility amendment, which could have been passed on at the 1974 convention. No steps whatever were taken and it must be held that there had been an acquiescence in the action of the 1972 convention in adopting this amendment, and failure to question the validity of the amendment prior to this application constitutes a waiver of the claim that improper notice was given as to this amendment.
*660 The alleged lack of qualification of Raymond Scott is based on the provisions of section 2 of article V of the original constitution, which states that no officer of fight shall succeed himself for more than one year. Scott prior to this election served one term of two years and a part of the unexpired term of his predecessor.
The original constitution provided that “ all officers of fight shall be elected for a term of one year. No officer of fight shall succeed himself for more than two successive years for the same office.” The constitution of 'June 12, 1970 (as amended) provided ‘1 no officer of fight shall succeed himself for more than one year” and that “the term of office for all elected officers of the fight organization shall be two (2) years.” Apparently, in amending the constitution to increase the term of office to two years, the body neglected to amend the time provision for succession. The period of one year must be construed to mean “ one term” in order to give meaning to the constitutional provision on succession, since otherwise it would be impossible to comply with the “ one year ” limitation. Raymond Scott has not succeeded himself for more than ‘ ‘ one term ” and the objections to his qualifications are not well founded.
The minutes show much confusion at the 1974 convention. The Scott and .Coalition forces agreed on closing the door to persons desiring entry during a vote, and the claims of delegates being barred from admission to the convention may well have occurred during such vote. While irregularities appear to have taken place at the meeting in identifying and barring delegates and in the voting procedure, there is no showing of fraud or wrongdoing. No notice was given by the Coalition forces to produce a list or record of members entitled to vote and certified by the appropriate officer of fight, nor was the right of any person challenged requiring the production of such record. (Not-For-Profit Corporation Law, § 607.) There is no claim that a member of fight who could protest the notice of meeting was barred. The court is not dealing with a stock corporation or one organized for profit. The avowed purpose of fight to unify the black people in Rochester would not be served by the court’s intervention under the circumstances here, and confusion and irregularity do not add up to fraud, illegality or wrongdoing. Even if some delegates were barred, their vote or presence would not have chang*ed the results of the election, the voiding of which is the relief sought, in the light of the *661 fact that the Coalition forces withdrew from the meeting before the election took place. In arriving at this determination the court has not considered matters outside of the record, set forth in any memorandum of law submitted herein.
The petition to set aside the election of officers etc. of fight and for a new election is dismissed and the application by way of cross motion for an order confirming the election is granted.