Third Department, June, 1977
(June 2, 1977)*

■ In the Matter of THOMAS GILHEANY et al., on Behalf of Themselves

---

* Not published with other decisions of May, 1977, 57 AD2d 825. [Rep.
* Not published with other decisions of June, 2, 1977, 58 AD2d 670. [Rep.

and All Others Similarly Situated, et al., Respondents, v CIVIL SERVICE EMPLOYEES ASSOCIATION, INC., Appellant.—Appeal, by permission, from an order of the Supreme Court at Special Term, entered May 31, 1977 in Albany County, which, in a proceeding pursuant to CPLR article 78, dismissed respondent's objections in point of law and directed an immediate trial of the issues of fact raised in the proceeding. In this proceeding, the petitioners, on behalf of themselves and all other members of the respective collective bargaining units of which they are members, seek, among other things, to set aside and invalidate the results of the ratification ballot by the members of the respondent Civil Service Employees Association (hereinafter referred to as CSEA) upon the proposed employment contracts with the State for employees in the Professional, Scientific and Technical Services Unit, the Operational Services Unit, the Administrative Services Unit and the Institutional Services Unit, and a direction that the CSEA be required and mandated to conduct a new ratification ballot in relation to these proposed contracts. In their petitions, petitioners alleged that the ratification balloting process utilized by CSEA violated general principles of law and equity, was fraught with fraud, and was illegal, unjust and unfair. To support these general allegations, petitioners incorporated into their respective petitions the affidavits of various members of CSEA. These affidavits recite 13 separate instances of alleged irregularities in the ratification balloting, including duplicative voting by some of the affiants, voting by a person who was ineligible to vote, and failure of certain eligible members of CSEA to receive ratification ballots. Significantly, neither the petitions nor the affidavits allege any bad faith or fraudulent practices on the part of the leadership of CSEA. Following the service of the petitions, respondent CSEA served an answer containing numerous objections in point of law. These objections sought dismissal of the petitions on the grounds, among others, that an article 78 proceeding was not a proper remedy, that the allegations of fraud were supported only by general conclusions and, therefore, the petitions failed to state a cause of action, that the petitioners failed to demonstrate the existence of irreparable injury, and that any irregularities in the balloting which may have occurred were beyond CSEA's control, done unintentionally, did not occur or were so inconsequential as to have no effect upon the outcome of the balloting. Special Term dismissed respondent CSEA's objections in point of law, enjoined respondent from entering into contracts with the State and directed an immediate hearing upon the issues of fact raised by petitioners' affidavits. An order was entered on Special Term's decision and, upon obtaining permission from Special Term, the present appeal ensued. Initially it should be observed, that, in addition to their pleadings, the parties have submitted other evidence to support their respective positions on the application to dismiss. Consequently, whether the present proceeding is treated as an article 78 proceeding in the nature of mandamus or prohibition or as a plenary action in equity, the court may treat the matter summarily and proceed to search the record to determine the existence of genuine triable issues of fact (see CPLR 409, subd [b]; CPLR 3211, subd [c]; *Matter of Levien v Board of Zoning & Appeals of Inc. Vil. of Russell Gardens,* 64 Misc 2d 40; see *Matter of Mattioli v Casscles,* 50 AD2d 1013). Of course, proof in evidentiary form and not bald conclusory assertions is necessary to establish the existence of a genuine triable issue of fact *(Capelin Assoc. v Globe Mfg. Corp.,* 34 NY2d 338). Although petitioners seek relief by way of a proceeding pursuant to CPLR article 78, their petitions fail to allege and there is no proof that a proper demand was made on CSEA

and that CSEA wrongfully refused that demand *(Austin v Board of Higher Educ. of City of N. Y.,* 5 NY2d 430, 442). Moreover, the petitions do not allege and there is no proof that in submitting the proposed employment contracts with the State to its membership for ratification CSEA was acting without or in excess of its authority and jurisdiction (see Civil Service Law, § 204; *Matter of Wald v Nassau Ch. Civ. Serv. Employees Assn.,* 72 Misc 2d 723). As hereinbefore noted, petitioners allege in their petitions that the ratification balloting was fraught with fraud. The petitions, however, lack specificity as to the fraudulent conduct complained of and, therefore, fail to state the elements of a cause of action in fraud (CPLR 3016, subd [b]; see *Lanzi v Brooks,* 54 AD2d 1057). Indeed, on the argument, petitioners candidly admitted that their petitions fail to state a cause of action in fraud. As a general rule, a court will not interfere with the internal affairs of a not-for-profit corporation, including a labor union, absent a showing of fraud or substantial wrongdoing (12 NY Jur, Corporations Not-for-Profit, § 76; see *New York State Soccer Football Assn. v United States Soccer Football Assn.,* 18 Misc 2d 112, 116 [membership corporation]; *Cohen v Rosenberg,* 262 App Div 274, affd no opn 287 NY 800; 32 NY Jur, Labor and Labor Relations, § 144). And, this general rule of judicial reluctance to interfere with the internal affairs of a not-for-profit corporation would seem to preclude a court from upsetting the results of the present ratification balloting in the absence of a showing that the result would have been different, but for the irregularities in the balloting procedure. (See *Matter of F.I.G.H.T. Inc.,* 79 Misc 2d 655, 661; see, generally, 6 White, New York Corporations [13th ed], par 618.01.) Here, a total of 102,972 ballots were mailed out and 63,876 ballots were returned. Of the 63,876 ballots that were returned, 48,703 affirmatively approved the contracts while only 15,173 voted against ratification. At the very best petitioners' proof establishes no more than 13 specific instances of irregularity in the ratification balloting. The allegations in the petitions concerning other alleged irregularities in the ratification balloting are conclusory in nature and are insufficient to raise genuine issues of fact mandating a trial. Furthermore, the petitions do not allege and there is no proof in evidentiary form that the alleged irregularities in the ratification balloting were so substantial or of such magnitude as to affect the outcome of the balloting. Special Term enjoined CSEA from entering into contracts with the State pending the hearing that it ordered, finding that such injunction would not irreparably injure *CSEA.* A party seeking a preliminary injunction must establish a clear right to the extraordinary remedy by demonstrating both that *he* is likely to succeed on the merits in the underlying action and that immediate and irreparable injury would result to *him* from a denial of the application *(People v Woman's Christian Assn. of Jamestown,* 56 AD2d 101; *Brand v Bartlett,* 52 AD2d 272). Here, there is absolutely no proof in the record of a threat of immediate and irreparable injury to petitioners or the classes they purport to represent. Consequently, a preliminary injunction should not have issued. Order reversed, on the law, without costs; petitions dismissed and preliminary injunction vacated. Koreman, P. J., Sweeney, Mahoney, Larkin and Herlihy, JJ., concur.