### Madeline BROWN and Augusto Ratto, Plaintiffs,

v.

### Vincent SOMBROTTO, as President of the National Association of Letter Carriers; National Association of Letter Carriers: Joseph Giordano, as President of the New York Letter Carriers, Branch 36, National Association of Letter Carriers; and New York Letter Carriers, Branch 36, National Association of Letter Carriers, Defendants.

### No. 80 Civ. 6234 (CBM).

United States District Court, S. D. New York.

Aug. 19, 1981.

Hall, Clifton & Schwartz by Arthur Z. Schwartz, New York City, for plaintiffs.

Cohen, Weiss & Simon by James V. Morgan, Franklin Moss, New York City, for defendants.

## MEMORANDUM OPINION

MOTLEY, District Judge.

Plaintiffs Madeline Brown and Augusto Ratto are members of the New York Letter Carriers, Branch 36, National Association of Letter Carriers (Branch 36). They brought this action against the National Association

of Letter Carriers (NALC); Branch 36; Vincent Sombrotto, President of NALC; and Joseph Giordano, President of Branch 36, pursuant to Section 102 of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 412. Plaintiffs seek declaratory and injunctive relief against the future use of a voting practice which they claim deprives them of their equal right to vote, in violation of Section 101(a)(1) of the LMRDA, 29 U.S.C. § 411(a)(1), and of NALC's Constitution. Plaintiffs and defendants moved for summary judgment. For the reasons discussed below, plaintiffs' motion for summary judgment is denied and defendants' motion for summary judgment is granted.

*The Facts*

The facts relevant to the motions for summary judgment are not in dispute. NALC and Branch 36 are labor organizations within the meaning of Section 3(i) of the LMRDA, 29 U.S.C. § 402(i). Branch 36 is a subordinate branch of NALC which draws its membership from Manhattan and the Bronx. NALC has approximately 225,000 members. Branch 36 has approximately 8,500 members. The internal operations of NALC, including elections and voting procedures, are governed by NALC's Constitution.

From August 10 through 16, 1980, NALC conducted its 52nd Biennial Convention (the National Convention) at Atlanta, Georgia. On August 14, 1980, delegates to the National Convention voted by written ballot for six delegates from NALC to the American Federation of Labor and Congress of Industrial Organizations (AFL–CIO) Convention and for the 1984 NALC Convention City. Pursuant to Article IV, Section I of the NALC Constitution, each affiliate branch is "entitled to one delegate and one vote in the [National] Convention for each twenty (20) members or fraction thereof." Branch 36 was therefore entitled to 426 votes at the National Convention.

Prior to August 10, the members of Branch 36 elected 131 delegates to the National Convention. Plaintiffs Brown and Ratto were among these delegates. On Au-

gust 10, before most of the delegates had arrived, Branch 36 registered the 131 Branch 36 delegates who had been duly elected by branch members and certified by Branch 36 President Giordano. Only 65 of the 131 elected and registered delegates actually attended the National Convention.

Article IV, Section 4 of the NALC Constitution provides:

> The delegates from any Branch present at the National Convention shall be allowed to cast the whole number of votes to which the Branch is entitled, provided such delegates agree unanimously as to who among them shall cast such vote. In case of disagreement the delegates in attendance shall be entitled to such number of whole votes as can be divided equally among them each pro rata. . . .

Prior to the balloting for NALC delegates to the AFL–CIO Convention and for the 1984 NALC Convention City on August 14, Branch 36 delegates met to discuss balloting procedures. Since the delegates were in disagreement, a procedure was established whereby those delegates who wished to vote individually indicated this intention by placing their names on a list. Twenty-seven delegates indicated that they wished to cast individual ballots. The other Branch 36 delegates at the meeting indicated that a Branch 36 officer should cast their votes for them.

During the election, Branch 36 Recording Secretary DeLuca cast a consolidated vote for the 38 Branch 36 delegates at the National Convention who were in agreement as well as for the 66 elected and registered delegates who were not present at the Convention. He allocated the votes by dividing the number of elected and certified Branch 36 delegates registered at the Convention (131) into the total number of votes to which Branch 36 was entitled (426), arriving at 3 votes per delegate. Accordingly, each of the ballots of the 27 delegates who voted individually counted as 3 votes. DeLuca voted on behalf of the remaining 104 registered delegates. That ballot counted as 312 votes.

On August 15, 1980, NALC Election Commissioner Joseph LaPlaca reported the results of the balloting to the National Convention and the report was unanimously adopted. Subsequently, plaintiff Ratto stated from the floor of the Convention that she objected to the manner in which Branch 36 voted. President Sombrotto responded that she could appeal the manner of voting to the NALC Election Committee.

On that day, plaintiffs Brown and Ratto sent to the Credentials Committee and the Election Committee a letter of protest stating that Branch 36 President Giordano and Recording Secretary DeLuca violated the NALC Constitution by registering and casting votes for delegates who were not physically in attendance at the Convention and by allowing part of the Branch delegation to vote individually and part as a block. They claimed that allocating only 3 votes to those who voted individually deprived them of their proper proportion of the total number of Branch 36 votes. Election Commissioner LaPlaca responded in a letter that, since the number of votes involved would not have any bearing on the outcome of the elections, the election would not be overturned.

On August 22, 1980, plaintiff Brown went to the United States Department of Labor to file a complaint concerning the election, pursuant to Section 402 of Title IV of the LMRDA, 29 U.S.C. § 482. The Department of Labor refused to accept the complaint because, according to the official with whom Brown spoke, the election of NALC delegates to the AFL–CIO Convention was not covered by Title IV. This opinion was confirmed by a letter from the Department of Labor to Brown dated September 2, 1980. Plaintiffs then filed this action pursuant to Section 102 of Title I of the LMRDA, 29 U.S.C. § 412.

*Discussion*

Defendants argue that the complaint should be dismissed for lack of subject matter jurisdiction because the exclusive remedy provided by the LMRDA for challenging the election at the National Convention is a civil action brought by the Secretary of Labor upon timely complaint filed by a member of the union. *See* 29 U.S.C. §§ 482–483; *Calhoon v. Harvey*, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964). Defendants contend that although plaintiffs allege jurisdiction under Title I of the LMRDA and seek relief against future union conduct, they are actually seeking post-election review of the manner in which the vote was counted for violations of Title IV.

Title IV of the LMRDA, 29 U.S.C. §§ 481–483, prescribes procedures for the election of officers of national and international labor organizations, as well as the exclusive remedy for challenging these elections. Section 3(n) of the LMRDA, 29 U.S.C. § 402(n), defines "officer" as follows:

"Officer" means any constitutional officer any person authorized to perform the functions of president, vice president, secretary, treasurer, or other executive functions of a labor organization, and any member of its executive board or similar governing body.

The court finds that the election at issue does not fall within the protection of Title IV because NALC delegates to the AFL–CIO Convention are not "officers" within the meaning of Section 3(n). The AFL–CIO is comprised of approximately 101 affiliated national and international labor organizations. NALC is one of these affiliated unions. Article IV, Section 3 of the NALC Constitution provides that the NALC National Convention shall elect AFL–CIO delegates, except that the President and Secretary-Treasurer of NALC are AFL–CIO delegates by virtue of their office. The role of NALC AFL–CIO delegates is to represent NALC at the biennial AFL–CIO Convention. They participate in the deliberations of the AFL–CIO Convention and vote upon resolutions which come before it. The AFL–CIO Convention is the supreme governing body of the AFL–CIO with respect to all matters of AFL–CIO policy, which is determined by the vote of the delegates.

The NALC delegates to the AFL–CIO Convention, however, perform no executive functions with respect to the governing of

NALC. They do not decide what NALC policy should be; rather, they vote at the AFL–CIO Convention in accordance with the policy decisions made by the Executive Council and President of NALC. The AFL–CIO delegates are not included in the list of elective officers in Article VI, Section 1 of the NALC Constitution. Thus, the function of NALC's delegates to the AFL–CIO Convention is distinguishable from that of the patrolmen in *Wirtz v. National Maritime Union of America*, 399 F.2d 544 (2d Cir. 1968). In that case, the Court of Appeals, in holding that patrolmen of the National Maritime Union were "constitutional officers" within the meaning of the Section 3(n) definition, found persuasive the treatment of patrolmen as officers by the union's constitution. In addition, the court noted that patrolmen were responsible for the strict enforcement of the union's no-discrimination policy and collective bargaining agreements and for adjusting grievances. NALC's delegates to the AFL–CIO Convention have no such responsibilities within NALC. Of course, the selection of the 1984 NALC Convention City did not involve the election of officers and is not governed by Title IV. Accordingly, the court holds that plaintiffs' claims do not arise under Title IV of the LMRDA.

Defendants argue that even if plaintiffs may assert jurisdiction under Section 102 of Title I of the LMRDA, 29 U.S.C. § 412, the complaint should be dismissed for failure to state a claim under that Title.

Section 101(a)(1) of the LMRDA, 29 U.S.C. § 411(a)(1) (Section 101(a)(1)), states:

*Equal rights.*—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

Section 102, 29 U.S.C. § 412, provides that any person whose rights secured by Section 101 have been infringed may bring a civil action in federal court. The issue presented by the complaint is whether the method by which the Branch 36 votes were counted at the National Convention deprived plaintiffs of their "equal right to vote" in the election of AFL–CIO delegates and of a Convention City.

In the leading case, *Calhoon v. Harvey*, 379 U.S. 134, 139, 85 S.Ct. 292, 295, 13 L.Ed.2d 190 (1964), the Supreme Court defined the "equal right to vote" requirement of Section 101(a)(1) as "no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote." The Court of Appeals for the Second Circuit has read Section 101(a)(1) narrowly, stating that *Calhoon* "clearly implied that the voting rights protected by Section 101(a)(1) must be *directly attacked* to warrant suit under Section 102." *Navarro v. Gannon*, 385 F.2d 512, 520 (2d Cir. 1967), cert. denied, 390 U.S. 989, 88 S.Ct. 1184, 19 L.Ed.2d 1294 (1968) (emphasis added). *See also Fritsch v. District Council No. 9*, 493 F.2d 1061 (2d Cir. 1974); *Gurton v. Arons*, 339 F.2d 371, 377 (2d Cir. 1964) (Lumbard, J., concurring); *Black v. Transport Workers Union of America, AFL–CIO*, 454 F.Supp. 813, 821 (S.D.N.Y.), *aff'd*, 594 F.2d 851 (2d Cir. 1978).

Underlying the narrow construction of Section 101(a)(1) is the general congressional policy to allow unions great latitude in supervising elections and in resolving internal controversies. *Calhoon v. Harvey, supra*, 379 U.S. at 140, 85 S.Ct. at 296.

The provisions of the L.M.R.D.A. were not intended by Congress to constitute an invitation to the courts to intervene at will in the internal affairs of unions. Courts have no special expertise in the operation of unions which would justify a broad power to interfere. The internal operations of unions are to be left to the officials chosen by the members to manage those operations except in the very limited instances expressly provided by the Act.

*Gurton v. Arons, supra,* 339 F.2d at 375. *Accord Sheldon v. O'Callaghan,* 497 F.2d 1276, 1281 (2d Cir.), *cert. denied,* 419 U.S. 1090, 95 S.Ct. 681, 42 L.Ed.2d 682 (1974).

In determining whether the voting procedure challenged here constituted a "direct attack" on plaintiffs' equal right to vote, consideration of the Court of Appeals' opinion in *Fritsch v. District Council No. 9, supra, (Fritsch)* is instructive. In *Fritsch,* members of local painters' unions alleged that their voting rights were diluted in violation of Section 101(a)(1) because members of autonomous locals were allowed to vote for the painters' collective bargaining representative, while the painters' locals had no reciprocal right to vote for the autonomous locals' representative. The Court of Appeals held that plaintiffs did not prove a violation of Title I, stating that "the attack on plaintiffs' voting rights is far from direct." *Id.* at 1063 n.5. The Court reasoned that

> the plaintiffs here cannot claim ... that they have been totally denied the right to vote for important union offices. Nor is there a claim that the votes of some members count more than the votes of others in the election.... We conclude that the command of Title I does not require a district court to enforce the "one-man-one-vote" rule in the sense urged here.

*Id.* at 1063 (citations and footnote omitted). Thus, the Court of Appeals considered a claim of dilution of voting power due to the alleged impropriety of permitting certain union members to have a say in the passage of a contract not to constitute a direct attack on the equal right to vote. *See Black v. Transport Workers Union of America, AFL–CIO, supra,* 454 F.Supp. at 822.

In the instant action, plaintiffs cannot claim that they were totally denied the right to vote in the election. Nor can plaintiffs successfully argue that their votes counted less than the votes of other union members. Each Branch 36 delegate was allocated three votes. What plaintiffs challenge is defendants' practice of registering Branch 36 delegates who are not physically present at the National Convention and of casting all the votes of these delegates with the consolidated ballot of delegates who are present and in agreement. While this practice has the effect of diminishing the efficacy of plaintiffs' vote, it does not discriminate against plaintiffs by denying them the same number of votes which the union has granted to others.

■ The challenged practice of casting the votes of absentee delegates with the consolidated vote of those present and in agreement appears to this court to be closer to the dilution of voting power challenged in *Fritsch* than to the type of direct attack recognized by the Court of Appeals to constitute a violation of Section 101(a)(1). In light of the holding in *Fritsch* and the policy against unauthorized interference by federal courts in the conduct of union elections, the court holds that the practice challenged by plaintiffs does not constitute a "direct attack" on plaintiffs' right to vote. Accordingly, plaintiffs have failed to state a claim under Section 101(a) of the LMRDA.

In addition, the court notes that there is no indication that the challenged voting procedure was a purposeful attempt on the part of Branch 36 officers to discriminate against plaintiffs. In the two most recent Court of Appeals decisions involving alleged infringement of the free speech rights of union members in violation of Title I, the court required a showing of willful discrimination. *See Newman v. Local 1101, Communications Workers of America, AFL–CIO,* 570 F.2d 439, 445–46 (2d Cir. 1978); *Schonfeld v. Penza,* 477 F.2d 899, 904 (2d Cir. 1973).

> Only where there is clear and convincing proof that the union action ... was "part of a purposeful and deliberate attempt by union officials to suppress dissent within the union," 477 F.2d at 904, should the federal court act under LMRDA. Otherwise we are bound to adhere to our longstanding policy against intervention in the internal affairs of unions, which are best "left to the officials chosen by the members to manage those operations ex-

cept in the very limited instances expressly provided by the Act." *Gurton v. Arons,* 339 F.2d 371, 375 (2d Cir. 1964). *Newman v. Local 1101, Communications Workers of America, AFL–CIO, supra,* 570 F.2d at 445–46.

Plaintiffs have not alleged that defendants' method of casting the votes of Branch 36 delegates was a purposeful and deliberate attempt to discriminate against them. The undisputed affidavits of Branch 36 officers state that the challenged practice was a good faith interpretation of the provisions of the NALC Constitution. *See* Affidavit of Joseph LaPlaca; Supplemental Affidavit of Vincent Sombrotto. Although it is unclear whether the requirement of willfulness applies to claims of denial of the equal right to vote as well as to claims of infringement of the right to free speech, the absence of a purposeful attempt to suppress dissent in this case lends support to this court's decision to dismiss plaintiffs' Title I claims.

■ Plaintiffs' remaining claim, that the Branch 36's voting procedure violated Article IV, Section 4 of the NALC Constitution, arises under state law. Although the court finds that plaintiffs have failed to state a claim under Title I of the LMRDA, it may, in its discretion, decide the pendent state claim if the federal and state claims derive from a common nucleus of operative fact and if the federal claims are not completely devoid of merit. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Black v. Transport Workers Union of America, AFL–CIO, supra,* 454 F.Supp. at 824; *Gulickson v. Forest,* 290 F.Supp. 457, 464 (E.D.N.Y.1968). The court finds that it is appropriate to exercise its pendent jurisdiction over plaintiffs' claim under state law. However, summary judgment must be granted to defendants as to this claim as well.

■ It is well-settled under New York law that the constitution and by-laws of a union, as an unincorporated association, express the terms of a binding contract between the union and its members, which define the privileges secured and the duties assumed by its members. *Polin v. Kaplan,* 257 N.Y. 277, 281, 177 N.E. 833, 834 (1931); *Caliendo v. McFarland,* 13 Misc.2d 183, 188, 175 N.Y.S.2d 869, 875 (Sup.Ct.N.Y.County 1958). Where the union's constitution is silent or ambiguous as to a particular procedure, New York courts will look to the practical construction, as evidenced in their conduct, that the union and its members have given to the relevant provision. "And what the parties have done by uniform and unquestioned acts, from the outset and over a long period of time, is entitled to great, if not controlling, weight for it shows how the parties who made the contract understood it." *Caliendo v. McFarland, supra,* 13 Misc.2d at 188, 175 N.Y.S.2d at 875.

Article IV, Section 4, cited above, is silent or ambiguous as to certain details of the voting procedure at the National Convention. First, it is unclear under what circumstances the provision allows one delegate to cast the vote of another. Section 4 expressly provides that one delegate may cast the whole number of votes to which the Branch is entitled, so long as all of the delegates are in agreement. In such a case, it is apparently proper for one delegate to cast the votes of delegates who are not physically present at the Convention. There is an ambiguity, however, as to what is to be done with the absentees' votes when all delegates are not in agreement. In addition, the Constitution does not state whether part of the Branch delegation may vote individually and part as a block, or whether the Branch must choose between the two methods of voting. Second, Section 4 is imprecise as to the meaning of the phrase "delegates in attendance" for purposes of allocating votes when some delegates vote individually.

■ Branch 36 President Giordano states in his affidavit that it has been the procedure of Branch 36 to register all of the duly elected and certified delegates to the National Convention prior to the commencement of the Convention. This procedure is followed in order to avoid unnecessary delay in registering Branch 36 dele-

**134**

gates who arrive at the Convention at various times after the Convention begins. Affidavit of Joseph Giordano, ¶¶ 2, 3. It is the practice of Branch 36 to allow one delegate to cast the votes of delegates not physically present at the Convention. In the past, no issue with respect to such delegate voting has been raised either because a Branch 36 officer cast the whole number of votes to which the Branch was entitled when all of the delegates present were in agreement or because Branch 36 delegates who wished to do so cast their ballots individually, a Branch 36 officer cast the ballots of the remaining delegates, and no delegate objected. Giordano Affidavit, ¶ 6. Since this voting practice does not violate any of the clear and explicit terms of Article IV, Section 4 of the NALC Constitution, the court finds that plaintiffs have not prevailed on their state law claim. *See Black v. Transport Workers Union of America, AFL–CIO, supra,* 454 F.Supp. at 824–25.

Moreover, in New York, "a court will not interfere with the internal affairs of a not-for-profit corporation, including a labor union, absent a showing of fraud or substantial wrongdoing." *Gilheany v. Civil Service Employees Association, Inc.,* 59 A.D.2d 834, 395 N.Y.S.2d 717, 719 (3rd Dept. 1977). In *Gilheany,* the court held that this general rule precluded it from interfering in a union's balloting process in the absence of a showing that the result would have been different, but for the alleged irregularities in the balloting procedure. *Id.* Plaintiffs in this action have not alleged any fraud of substantial wrongdoing on the part of Branch 36 officers which would warrant this court's interference in the internal affairs of the union in accordance with New York law.

The undisputed facts of this case do not evidence a direct attack on plaintiff's right to vote as construed by the cases in this Circuit or a substantial violation of the terms of the union's Constitution. Rather, plaintiffs' claims essentially arise out of a difference in interpretation of certain ambiguous provisions of the NALC Constitu-

* Final typed copy of Memorandum Opinion filed August 19, 1981.

tion concerning the details of voting procedure. In light of federal and state policy against judicial interference in the internal affairs of unions, except in very limited instances, the court finds that this dispute is one better left to the union's own mechanisms for resolving such conflicts. Accordingly, defendants' motion for summary judgment dismissing the complaint is granted.

Dated: New York, New York

September 8, 1981 *